# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ROUMANN CONSULTING INC. and
RONALD ROUSSE,

        Plaintiffs,

                                    Case No. 18-CV-1551

    v.

SYMBIONT CONSTRUCTION, INC.,
SYMBIONT HOLDING COMPANY, INC.,
SYMBIONT SCIENCE, ENGINEERING AND CONSTRUCTION, INC.,
THOMAS C. BACHMAN,
SONYA K. SIMON, ESQ.,
EDWARD T. MANNING, JR. and
TIMOTHY P. NELSON,

        Defendants.

---

## PLAINTIFFS ROUMANN CONSULTING INC. AND RONALD ROUSSE'S COMBINED BRIEF IN OPPOSITION TO MOTIONS TO QUASH AND IN SUPPORT OF MOTION TO COMPEL

---

Plaintiffs Roumann Consulting Inc. and Ronald Rousse, by their attorneys, Halloin Law Group, S.C., submit the following combined brief in opposition to the Defendants' motions to quash (DNs 37, 38) and in support of their motion to compel pursuant to Federal Rule of Civil Procedure 37(a) and Civil Local Rule 7(a). The grounds for this response and motion are set forth herein.

This case arises from the Defendants' misuse of Roumann's and Mr. Rousse's confidential, proprietary information. Roumann and Mr. Rousse devoted substantial effort to developing their confidential information—composed of customer contact information, subcontractor lists, and most importantly, detailed pricing information

to be used to bid specific types of big box stores and fuel centers. Roumann's and Mr. Rousse's confidential information was stored in a database which T.V. John & Son, Inc. could access and use to improve its ability to obtain and manage work. The confidential information gave the user a significant competitive advantage when bids were submitted and construction work was performed. Roumann's Independent Contractor Agreement with T.V. John contained specific restrictions on the use of Roumann's confidential information, as well as prohibitions on its misuse. The Independent Contractor Agreement was executed in March 2015 as part of T.V. John's sale to Symbiont Science, Engineering and Construction, Inc. ("Symbiont Science"), and assignment to Symbiont Holding, Inc. ("Symbiont Holding") later that month.

Despite these protections, Symbiont Construction, Inc., formerly known as T.V. John and Son, Inc.,[1] improperly used Roumann's and Mr. Rousse's confidential information to bid on and obtain construction projects after T.V. John/Symbiont terminated Roumann on August 21, 2017. (*See generally* DN 1, ¶¶ 122–132.) Because the improper use of Roumann's and Mr. Rousse's confidential information is the crux of this litigation, Roumann and Mr. Rousse have sought first and third-party written and oral discovery regarding T.V. John's valuation and related updates. The valuation is primarily based upon raw data derived from Roumann's and Mr. Rousse's sales history, and has been periodically updated.

---

[1] Plaintiffs have recently discovered that other Symbiont entities have also used Roumann's confidential information to Symbiont's benefit and Roumann and Mr. Rousse's detriment.

Roumann and Mr. Rousse's motion to compel and Defendants' two motions to quash primarily involve five discovery requests seeking the same body of documents and information. Roumann and Mr. Rousse are asking this Court to compel the production of documents relating to the valuations placed upon their confidential information, including specifically the subcategory of good will, at the time of Symbiont Science, Engineering and Construction, Inc.'s purchase of T.V. John (and subsequent updates). Symbiont does not deny the valuations took place.

This information was first requested in Request Numbers 1 through 5 of Roumann's and Mr. Rousse's Third Set of Requests for Production of Documents. (*See* Halloin Decl. Ex. E, p.7.) Defendants objected to these requests on December 4, 2020. (Halloin Decl. Ex. F.) As an attempted compromise, Roumann and Mr. Rousse then attempted to obtain the data points from those valuations in a Rule 30(b)(6) deposition noticed on March 16, 2021, and taken on March 31, 2021. (Halloin Decl. Ex. D.) Symbiont refused to produce a witness on the relevant topics, Topics 11 and 12.

Because Roumann and Mr. Rousse knew who had conducted the valuation and coordinated the assembly of the relevant information for the 2015 sale, they subpoenaed those persons/entities as well—SVA Certified Public Accountants, S.C., Charles G. Vogel, and Godfrey & Kahn, Esq. (Halloin Decl. Exs. J–L). Defendants have moved to quash these subpoenas. (DNs 37, 38.)

The requested information is relevant to this case and Plaintiffs' damages because it relates to the valuation of the asset that has been wrongfully taken and

misused. All of the requested information has been identified by Roumann's and Mr. Rousse's expert, Stephen VanderBloemen, as relevant to his damage analysis. In fact, Mr. VanderBloemen himself took the unusual step of drafting the requests, and the questions listed in the Topics 11 and 12 of the Rule 30(b)(6) notice.

This is not a fishing expedition or overly burdensome discovery. The requests do not seek a substantial amount of information. It is suspected that the requests involve ten responsive documents at most. (VanderBloemen Decl. ¶ 8.) The Court has already issued a Protective Order, drafted by Symbiont's counsel, which would permit the producing parties to limit the production to attorneys and experts. (DN 32.)

<div align="center">

## BACKGROUND

</div>

### A. Mr. Rousse and Roumann Are Hired and Disclose Their Confidential Information.

As of 2011, Mr. Rousse had light commercial construction customers with established expediting relationships that were flourishing, including three national big box retailers. (DN 1, ¶ 18.) Conversely, T.V. John was a small contractor that had never been involved with a light commercial construction project for a big box retailer. (DN 1, ¶ 17.)

In 2012, out of concern for T.V. John's ability to secure profitable work, Mr. Nelson and T.V. John met with and entered into an Employment Agreement with Mr. Rousse whereby Mr. Rousse would provide consulting services to T.V. John. (DN 1, ¶ 19.) While Mr. Rousse initially was an employee of T.V. John, T.V. John later asked Mr. Rousse to perform the same role as an independent contractor. As

such, Roumann was formed by Mr. Rousse and Roumann and T.V. John executed an Independent Contractor Agreement (the "Independent Contractor Agreement"), the terms of which are incorporated in full by reference. (DN 1-2.)

With the benefit of Mr. Rousse and Roumann's customer relationships and expediting services, T.V. John entered the commercial big box retailer market. T.V. John's business flourished. Based on the book of business built by Mr. Rousse, Symbiont Science, Engineering & Construction, Inc. ("Symbiont Science") approached and engaged Mr. Nelson in discussions about the purchase of T.V. John by Symbiont Science's parent company, Symbiont Holding Company, Inc. (DN 1, ¶ 28.) In March 2015, Symbiont Holding purchased T.V. John and assumed T.V. John's assets and liabilities, including T.V. John's obligations and liabilities under Mr. Rousse's Employment Agreement and Roumann's Independent Contractor Agreement. (DN 1, ¶¶ 30, 32.)

Relevant to this dispute, the Independent Contractor Agreement memorialized certain protections for Roumann and Mr. Rousse's confidential information. The Independent Contractor Agreement provided:

> During the course of the relationship between the parties, each party (the "Disclosing Party") may disclose to the other party (the "Receiving Party") certain of the Disclosing Party's Confidential Information (as hereinafter defined). The Receiving Party acknowledges that this information has independent economic value, actual or potential, that is not generally known to the public or to others who could obtain economic value from its disclosure or use, and that this information is and has been, subject to a reasonable effort by the Disclosing Party to maintain its secrecy and confidentiality.

. . . .
> The term "Confidential Information" shall mean the Disclosing Party's information that is proprietary or confidential in nature or confidential or proprietary information that is licensed to the Disclosing Party and includes, but is not limited to, the Disclosing Party's <u>manner and method of conducting business, customer proposals, concepts, ideas, plans, methods, market information, technical information and the Disclosing Party's client, prospective client and contact lists.</u>

(DN 1-2, p.6 (emphasis added).) The Independent Contractor Agreement also memorialized that any confidential information was given to the receiving party "<u>solely</u> for the purpose of permitting the Receiving Party to utilize it in connection with the performance of its obligations" under the agreement. (DN 1-2, p.6 (emphasis added).)

The Independent Contractor Agreement also stated:

> The Receiving Party also acknowledges that this information <u>has been developed at great expense to the Disclosing Party and is necessary for the Disclosing Party's conduct of its business.</u>

(DN 1-2, p.6 (emphasis added).) Roumann and Mr. Rousse had spent substantial resources developing subcontractor and supplier lists, bidding detail, technical information, and costumer proposals to allow them to successfully bid projects. (DN 1, ¶ 124.) In recognition of the value of the confidential information, the Independent Contractor Agreement contained specific restrictions on the use of any confidential information. (*See* DN 1-2, p.6.)

6

As part of Roumann's and Mr. Rousse's disclosure of their confidential information to T.V. John (and later Symbiont), Roumann and Mr. Rousse devoted substantial effort to the transfer and provision of their confidential information to a database on Procore, a construction management software program. (Rousse Decl. ¶¶ 2–3.) The Procore database stored Mr. Rousse and Roumann's customer contact information, subcontractor lists, and most importantly, detailed pricing information to be used for bidding purposes for specific types of stores and fuel centers. (Rousse Decl. ¶¶ 2–3.) Mr. Rousse's and Roumann's confidential information gave the database user a significant competitive advantage when bids were submitted and construction work was performed. (Rousse Decl. ¶ 4.)

Roumann and Mr. Rousse will show that substantially all of the valuable information contained in the Procore database is either their confidential information or derived from their confidential information and assembled at Mr. Rousse's direction. (Rousse Decl. ¶ 4.)

**B.    Roumann's and Mr. Rousse's Work and Confidential Information Affect the Valuation of T.V. John and the Symbiont Entities.**

As of the date of Symbiont Science's purchase of T.V. John, the vast majority of T.V. John's business was based on projects obtained by Mr. Rousse using Mr. Rousse's and Roumann's confidential information. (DN 1, ¶¶ 23–27.) Specifically, "[a] valuation was made by Symbiont of T.V. John, and a value placed upon T.V. John's stock, based upon T.V. John's 2014 and 2015 performance." (DN 1, ¶ 29.)

The valuation of T.V. John's business—specifically the good will and/or value assigned to the company's assets—was performed by SVA Certified Public

Accountants, S.C. f/k/a Suby, Von Haden & Associates and Charles Vogel of Godfrey & Kahn, S.C.. Although Mr. Rousse never received a copy of the purchase agreement between T.V. John and Symbiont or a copy of the financial valuation of his big box client relationships, Mr. Rousse provided information to the parties involved in the valuation. Mr. Rousse also did not receive any good will valuation or valuation of T.V. John's assets, which at the time included Mr. Rousse's and Roumann's confidential information. (Rousse Decl. ¶ 12.)

## C.    Roumann Is Terminated and Its Confidential Information Is Misused.

Despite its profitable relationship with Roumann, T.V. John (later renamed Symbiont Construction, Inc.) terminated the Independent Contractor Agreement on August 21, 2017. (DN 1, ¶ 68.) T.V. John and Symbiont continued to use Roumann's and Mr. Rousse's confidential information on numerous projects after the termination without consent. (*See, e.g.*, DN 1, ¶¶ 127–130.)

On March 31, 2021, during a Rule 30(b)(6) deposition of Symbiont Construction/T.V. John, the Defendants were asked to identify all projects that were bid upon by any Symbiont entity, of any type, since the date of Roumann's August 21, 2021 termination. (*See* Halloin Decl. Ex. A, 3/31/2021 Corp. Rep. Dep. 190:9–16.) The nine page list provided in response to this request was marked as Plaintiffs Deposition Exhibit 310. (*See* Halloin Decl. Ex. A, 3/31/2021 Corp. Rep. Dep. 190:9–16, Ex. B.)

At the April 7, 2021 deposition of Mr. Nelson, Mr. Nelson admitted all of the Symbiont projects that he was involved in used the Procore database. (Halloin Decl. Ex. C, 4/7/2021 Nelson Dep. 131:8–140:19.) Mr. Nelson also believed that projects

handled by others would have also used Roumann's confidential information as stored on the Procore database. (Halloin Decl. Ex. C, 4/7/2021 Nelson Dep. 131:8–140:19.)

On March 31, 2021, Plaintiffs also learned that Symbiont Construction had discontinued its business operations and that Symbiont Science now uses Roumann's confidential information as stored on the Procore database. (*See* Halloin Decl. Ex. A, 3/31/2021 Corp. Rep. Dep. 17:11, 25:11–15.) Roumann has not consented to Symbiont Science or any of its employees using Roumann's confidential information. (Rousse Decl. ¶¶ 6–11; *see also* Halloin Decl. Ex. B.)

## D. Plaintiffs Attempt to Obtain Discovery Regarding the Misuse of Their Confidential Information.

This litigation stems from the above facts. Plaintiff Roumann Consulting Inc.'s First Requests for Production of Documents to Defendant Symbiont Construction, Inc. were issued on January 16, 2020. (Halloin Decl. ¶ 6.) Defendant Symbiont Construction Inc.'s response was not served until around July 8, 2020. (*Id.*) Some of the documents referenced in Symbiont Construction's responses were produced on August 14, 2020 but a supplemental production was not made until October 22, 2020. (*Id.* ¶ 8.)

Between the August 14, 2020 initial production and the October 22, 2020 supplemental production, Plaintiffs issued narrowly tailored document requests to Defendants Symbiont Construction, Inc., Symbiont Holding Company, Inc. and Symbiont Science, Engineering and Construction, Inc., including:

1.  Symbiont's purchase agreement with T.V. John & Son, Inc. in 2015.

2.  The pro formas referenced by Edward Manning on page 44 (reference is to the deposition taken on August 30, 2018, in Case Number 17-CV-I407).

3.  The financial work referenced by Edward Manning on page 44, whether done by Dave Schlidt or Suby, Von Haden & Associates (reference is to deposition taken on August 30, 2018, in Case Number 17-CV-1407).

4.  All documents that reflect the value placed upon the existing book of business of T.V. John & Son, Inc. had at the time of the purchase by Symbiont, as well as the value placed upon good will.

5.  Any valuation done of Symbiont Construction in 2019 or 2020, including, without limitation, stock valuation.

(Halloin Decl. Ex. E, p.7)

Symbiont Construction did not respond to these five requests until December 4, 2020. (Halloin Decl. Ex. F.) No documents were produced in response to any of the five document requests. Symbiont Construction's response to each request was the same: "Pursuant to Rule 34(b)(2)(C) on the basis of these objections, Symbiont is not producing documents responsive to this Request." (*Id.*, pp.2–6.)

In light of Symbiont Construction's refusal to provide a substantive response, Plaintiffs attempted to avoid the need for Court intervention by serving the Defendants with a detailed Rule 30(b)(6) notice. The notice was unusual in that some of the topics were prepared by Roumann's expert in order to obtain information relevant to their damages assessment. Specifically, Topic 11 sought an

oral explanation of the same information as Roumann's Third Set of Requests for Production of Documents. (Halloin Decl. Ex. G, pp.5–6.) Topic 12 sought the same information from other sources—namely documents where a good will valuation would need to be disclosed. (Halloin Decl. Ex. G, pp.6–8.)

Prior to the noticed deposition, Defendants refused to produce a witness on Topics 11 and 12 and had not provided any log of withheld documents. A number of discussions took place as a good faith attempt to resolve this discovery dispute. (Halloin Decl. ¶¶ 10–19, Exs. H–I.)

During the discussions that ensued, Plaintiffs addressed Defendants' objections—including their relevancy objection. Plaintiffs explained that the requests were prepared by The VanderBloemen Group. (Halloin Decl. ¶¶ 13–15.) Plaintiffs explained that The VanderBloemen Group narrowly tailored the requests to obtain valuation information relevant to their determination of Roumann's damages. Plaintiffs also explained that the requested information related to the value placed upon the income stream from Roumann's customers, as well as the value placed upon Roumann's confidential information. Such information would normally be considered during any valuation of good will. (*See* VanderBloemen Decl. ¶¶ 3–10.) When Defendants refused to produce the requested information, Plaintiffs asked that a witness be designated and produced on the other noticed topics so a record could be made. (Halloin Decl. ¶¶ 10–19, Exs. H–I.)

On February 9, 2021, the Defendants advised:

> Topics 11 and 12 – These topics request information and data (Topic 11) and documents (Topic 12) about Symbiont Construction's historic financial records from 2010-2020. Your notice states, and you confirmed, that these topics "are directed at the objections raised to certain documents in an effort to resolve a discovery dispute." That is, you previously requested these documents pursuant to Rule 34, and Symbiont Construction objected in writing on December 4, 2020. As I explained, we do not believe that addressing objections is a proper topic or use of Rule 30(b)(6) depositions. Symbiont Construction objects to these topics for the same reasons set forth in its December 4, 2020 written objections: the information sought is not relevant to the remaining claims or defenses, is overly-broad, unduly burdensome, and disproportionate to the needs of the case.
>
> When we spoke to discuss your topic list, I agreed to revisit Topics 11 and 12 and asked for you to explain how the information sought was relevant to the remaining issues in the case (and setting aside the other objections for the time being). You explained the information sought was needed by your expert to calculate damages. Specifically, that your expert wished to calculate diminution of Roumann Consulting, Inc.'s goodwill that was caused by the alleged misuse of confidential information. First, Roumann Consulting has not disclosed that it is seeking to recover that category of damages. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii)). We contend that Roumann Consulting must do so, so that Symbiont Construction may defend against such a claim.

(Halloin Decl. Ex. H, pp.3–4.)

On March 15, 2021, with the issue unresolved, the Plaintiffs issued three subpoenas to the people/entities that they knew had copies of the valuation—SVA Certified Public Accountants, Charles Vogel, and Godfrey & Kahn. (Halloin Decl.

Exs. J–L.) After requested by Plaintiffs' experts, the subpoenas sought broader information than requested in the previous discovery issued to Defendants.[2]

On March 16, 2021, Defendants finally provided a date for Symbiont's Rule 30(b)(6) deposition. Plaintiffs issued a revised notice of deposition, including revisions to Topics 11 and 12. Plaintiffs added the following clarification to these topics:

> The above requests are necessary to establish the good will of the company. The above documents will either reflect that information, or be sufficient to allow the Plaintiff's expert firm to make that calculation. We are willing to agree to any reasonable confidentiality agreement in that regard. We do plan[ ] to go forward with the deposition regardless of the position of the Defendants, to make a record of specific objections for motion practice.

(Halloin Decl. Ex. D, p.9 (emphasis removed).) The Rule 30(b)(6) deposition of Symbiont took place on March 31, 2021. The witness was instructed not to testify as

---

[2] For example, the SVA Certified Public Accountants subpoena sought:

> T.V. John & Son, Inc.'s and Symbiont Construction, Inc.'s internal and external financial statements from 2010 to the present, including those issued with a CPA report, (i.e. audit, review or compilation) and notes to the financial statements. The following specific information is requested:
> a.    Independent accountants reports;
> b.    Balance sheets;
> c.    Income statements;
> d.    Statement of changes in stockholders equity;
> e.    Statement of changes in cash flow;
> f.    Notes to the financial statements; and
> g.    Supplementary information:
>       i.    Contract/Job Schedules, including: completed contracts and contracts in progress;
>       ii.   Indirect Construction Costs; and
>       iii.  Selling, Administrative and General Expenses.

(Halloin Decl. Ex. J, p.6.)

to questions related to Topics 11 and 12. (*See, e.g.,* Halloin Decl. Ex. A, 3/31/2021 Corp. Rep. Dep. 150:3–155:3.)

Plaintiffs took the deposition of T.V. John's former President and owner, Tim Nelson, on April 7, 2021. (Halloin Decl. Ex. C.) He was represented by Symbiont's counsel in this case. Consistent with earlier testimony, Mr. Nelson testified that Symbiont's accountant conducted a valuation and that Mr. Vogel was involved. (Halloin Decl. Ex. C, 4/7/2021 Nelson Dep. 40:5–41:25.) On his own initiative, Mr. Nelson refused to answer any questions regarding the valuation on the basis of confidentiality. (*Id.* at 37:13–17.) He was advised that a protective order was in place. (*Id.* at 30:10–19.)

## ARGUMENT

Neither the Defendants nor the subjects of the subpoenas have produced any documents in response to Plaintiffs' properly served discovery. However, the requested documents exist. Specific valuations were placed upon Mr. Rousse's and Roumann's confidential information when Symbiont purchased T.V. John in 2015. Such valuations would also have been required to be evaluated as part of the Defendants' annual financial statements.

Defendants, as the objecting party, have the burden to prove to this Court that "a particular discovery request is improper." *Baires Blue Cross Blue Shield of Minnesota v. State Farm Mut. Auto. Ins. Co.*, No. 16-CV-402-JPS, 2016 WL 4591905, *5 (E.D. Wis. Sept. 2, 2016). "The objecting party must show with

specificity that the request is improper"—blanket assertions that the request is overly burdensome or irrelevant are insufficient. *Id.*

A.   **Defendants' Objections to Plaintiffs' September 24, 2020 Document Request Numbers 1 Through 5 Are Improper.**

This motion practice could have been avoided if Defendants provided a full and complete response to Plaintiffs' September 24, 2020 document requests. Instead of a substantive response to Plaintiffs' September 24, 2020 document request numbers 1 through 5, Defendants stated: "Pursuant to Rule 34(b)(2)(C) on the basis of these objections, Symbiont is not producing documents responsive to this Request." (Halloin Decl. Ex. F.) The stated objection was primarily to relevancy; however, Defendants also asserted that the requests sought "documents protected by the attorney-client privilege, work product doctrine, or any other privilege or protection." (*See id.*, p.3.) No further explanation was provided.

Mere citation to Federal Rule of Civil Procedure 34(b)(2)(C) is improper. The rule, which was amended in 2015, states: "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." The basis for the objection must be explained.

By failing to comply with Rule 34, Defendants have waived their right to object. The current Rule 34 aims to end boiler plate objections and requires parties to provide specific explanations. *See Fischer v. Forrest*, Nos. 14-cv-1304, 14-cv-1307, 2017 WL 773694, *2 (S.D.N.Y. Feb. 28, 2017). The *Fischer* court concluded that attorneys have had ample time to adjust to the Rule 34 amendment and warned that "any discovery response that does not comply with Rule 34's requirement to

15

state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)." *Id.*[3]

## B. The Discovery Requested From the Defendants and SVA Certified Public Accountants, Godfrey & Kahn, and Charles Vogel Is Not Privileged and Is Relevant and Proportional to the Needs of This Case.

The information requested from the Defendants, SVA Certified Public Accountants, Godfrey & Kahn and Attorney Charles Vogel is relevant to this controversy. In 2015, the Federal Rules of Civil Procedure were amended to give the parties new guidelines (with one notable omission) for engaging in discovery.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1). "[T]he oft-cited 'reasonably calculated to lead to the discovery of admissible evidence' language was removed from [Rule 26] through the amendment because it had been used 'by some, incorrectly, to define the scope of

---

[3] Courts in other jurisdictions have reached the same conclusion. *See Sobol v. Imprimis Pharm.*, No. 16-14339, 2017 WL 5035837, *11 (E.D. Mich. Oct. 26, 2017) (citing *Fischer* in holding that "boilerplate objections are legally meaningless and amount to a waiver of an objection"); *see also, e.g., Sream, Inc. v. Hassan Hakim & Sarwar, Inc.*, No. 16-81600, 2017 WL 878704,*4–*5 (S.D. Fla. Mar. 6, 2017); *City of Hartford v. Monsanto Co.*, No. 15-1544, 2017 U.S. Dist. LEXIS 181651, *3–*4, n.1 (D. Conn. Nov. 2, 2017); *Team Contractors, L.L.C. v. Waypoint NOLA, L.L.C.*, No. 16-1131, 2017 WL 3216582, *5–*7 (E.D. La. July 28, 2017).

16

discovery' as more broad than the scope set forth in Rule 26(b)(1)." *Estate of Swayzer v. Clarke*, No. 16-CV-1703, 2017 WL 6327555 (E.D. Wis. Dec. 11, 2017) (quoting advisory committee's note to 2015 amendment).

Here, the discovery requested by the Plaintiffs—first from the Defendants in written discovery, then in oral discovery when Defendants refused to fully respond to the written discovery, and then from third-parties SVA Certified Public Accountants, Godfrey & Kahn, and Attorney Vogel when Defendants refused to fully respond in written and oral discovery—is not privileged, is relevant to Plaintiffs' claims, and is proportional to the needs of the case.

### 1. The Requested Materials Are Not Privileged.

Rule 26 generally permits discovery of non-privileged materials. As such, one factor to be considered during any discovery dispute is whether a privilege is being asserted. While Defendants have presented a boilerplate objection on the basis of attorney-client communications, work-product, and "any other privilege" (Halloin Decl. Ex. F, pp.3–5), the Defendants have not properly asserted any privilege objection. *See* Fed. R. Civ. Pro. 26(b)(5)(A).

In their motion to quash the Charles Vogel and Godfrey & Kahn subpoenas, the Defendants claim for the first time that Mr. Vogel's documents "may have notes protected by the attorney-client privilege." (DN 38, p.3) No log has been produced to indicate whether these notes actually exist—if they do, the notes should be redacted and the underlying document produced. The fact that the requested financial

information is "sensitive" commercial information that is contained in an attorney's file does not mean the information is privileged.

## 2. The Requested Discovery Is Relevant.

The Plaintiffs' complaint specifically pleads that "[a] valuation was made by Symbiont of T.V. John, and a value placed upon T.V. John's stock, based upon T.V. John's 2014 and 2015 performance." (DN 1, ¶ 29.) According to Plaintiffs' expert, this valuation and T.V. John/Symbiont Construction's annual financials would reflect the value placed on Mr. Rousse's and Roumann's confidential information. (VanderBloemen Decl. ¶¶ 3–10.) The Defendants have not denied that the information sought exists[4] but have objected to the discovery of the financial information and valuation on the basis of relevancy and undue burden.

Discovery related to Defendants' financial information is both relevant and permissible in cases involving misuse of confidential information and unjust enrichment. For example, in *Epic Systems Corp. v. Tata Consultancy Services Ltd.,* 980 F.3d 1117 (7th Cir. 2020), the Seventh Circuit reviewed a similar confidential information claim and concluded that the plaintiff's damages could be measured in a variety of ways depending upon the circumstances of the case. *Id.* at 1129. The Court concluded:

> Simply put, there is no single way to measure the benefit conferred on a defendant; the measurement is context dependent. The important considerations are that a judge

---

[4] Mr. Nelson admitted that the information being sought is "probably" in the 2015 purchase agreement or accountants' valuation. (Halloin Decl. Ex. C, 4/7/2021 Nelson Dep. 42:17–24.) During his deposition, Mr. Nelson was at his home with his records, but he refused to check and see, stating that it is "confidential information that I'm not able to give out." (*Id.* at 42:17–43:5.)

> or jury calculates the benefit to the defendant—not the loss to the plaintiff—and that this calculation is done with reasonable certainty.

*Id.* at 1130. Here, the monetary benefit conferred on the Defendants is represented in the requested financial information. By requesting records dating back to 2010, Plaintiffs have requested information from three distinct periods of time: (1) before Mr. Rousse and Roumann's confidential information would have been considered an "asset" of T.V. John in order to establish a baseline valuation, (2) while Defendants could use Roumann's confidential information pursuant to the Independent Contractor Agreement, and (3) the period after Roumann's termination.

### 3.    The Requested Discovery Is Proportional to the Needs of This Case.

Defendants' final defense to withholding the requested information is that the requests create an undue burden. However, Defendants have never explained why the narrow requests are burdensome or require anything more than a simple file review. According to Federal Rule of Civil Procedure 26(b)(1), non-privileged and relevant discovery is generally permitted so long as the requests are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." When the factors outlined in Rule 26 are applied to the facts of this case, it is clear that the requested discovery is permissible.

The issue at stake in this case is the information which made Roumann commercially competitive and which was essential to Roumann's business. The Defendants have already admitted that they used Roumann's confidential information as stored on the Procore program for multiple projects after Roumann was terminated. (*See* Hallion Decl. Ex. B.) The value of that (improper) continued use is the center of this lawsuit.[5]

Nevertheless, Defendants argue that the financial information reflecting the benefit obtained by their use of Roumann's confidential information is overbroad and burdensome. The original request was not burdensome. It was narrowly tailored to the needs of Plaintiffs' expert witness accountants and simply sought the purchase agreement between T.V. John and Symbiont, as well as the valuation opinion upon which the agreement was based. This basic business information should be readily accessible within each entity's corporate records. Plaintiffs have, in good faith, attempted to minimize the burden on the Defendants, including listing the specific questions to be asked and answered at the Rule 30(b)(6) deposition. Nevertheless, Defendants have refused to produce the information.

---

[5] As stated in the Background section above, the Independent Contractor Agreement states that Roumann's confidential information has "independent economic value, actual or potential, that is not generally known to the public or to others who could obtain economic value from its disclosure or use, and that this information is and has been, subject to a reasonable effort by the Disclosing Party to maintain its secrecy and confidentiality." (DN 1-2, p.6.) It also states that "this information has been developed at great expense to the Disclosing Party and is necessary for the Disclosing Party's conduct of its business." (*Id.*)

## C. Roumann and Mr. Rousse Have Not Violated Rule 26 and No Supplemental Initial Disclosure Is Required.

Because the requested discovery is not privileged and is relevant and proportional to this case, Defendants conclude that the document requests, Rule 30(b)(6) topics, and third-party subpoenas are improper because Plaintiffs' Initial Rule 26(a) Disclosures did not explicitly state that good will damages were being pursued. According to Defendants' objection,[6] Plaintiffs are required to supplement their disclosures before any discovery on the topic of any valuation of T.V. John's business, assets, or good will is allowed to proceed. (Oettinger Decl. ¶¶ 7–8, DN 39.)

Defendants are incorrect. To the extent that Rule 26(a) even requires such specificity, no supplemental disclosure is required by Rule 26(e). Federal Rule of Civil Procedure 26(e) requires a party to supplement its initial disclosures "if the additional or corrective material has not otherwise been made known to the other parties during the discovery process or in writing."

Defendants motions to quash make it clear that they have had months of notice regarding Plaintiffs' interest in good will damages. Plaintiffs' written discovery, oral discovery, and communications with opposing counsel have put Defendants on notice that good will damages are being sought in this lawsuit. (*See* Oettinger Decl. ¶¶ 1–6, DN 39.) Here, the Plaintiffs disclosed the purpose of the requests right in the Rule 30(b)(6) notice itself. Further, good will damages were

---

[6] *Benson v. M2 Prop. Grp. LLC,* the case cited by Defendants, is an attorneys' fees case which only discusses Rule 26 in order to determine whether Plaintiff prevailed on a motion to compel. 2019 WL 2359395, *2 (E.D. Wis. June 4, 2019) (confirming that rule requires computation "based on the information reasonably available" to the Plaintiff in order "to give the Defendants some idea of the value of Plaintiff's claims.") However, even the *Benson* decision notes that the Court denied the defendant's request to limit further discovery based on the allegedly insufficient disclosure.

also discussed during the discovery conferences between the parties. (Halloin Decl. ¶¶ 13–19.)

This is not a trial by ambush—the fact discovery period in this case does not close for more than 200 days. (DN 36.) Because Defendants know that good will damages may be sought—depending on the financial information they are withholding—no formal supplement is necessary prior to allowing the requested discovery to proceed.

<u>CONCLUSION</u>

Roumann and Mr. Rousse request that the Court grant their motion to compel and deny Defendants' motions to quash. The rationale for granting the motion to compel is the same as denying the Defendants' motion to quash—that the requested discovery is relevant to the computation of Plaintiffs' damages.

Roumann and Mr. Rousse specifically request that the Court:

1. Order Defendants to produce all documents responsive to document requests numbers 1 through 5 of Plaintiff Roumann Consulting Inc.'s Third Set of Requests for Production of Documents to Defendants Symbiont Construction, Inc., Symbiont Holding Company, Inc. and Symbiont Science, Engineering and Construction, Inc. (Halloin Decl. Ex. E);

2. Produce a witness to respond to Topics 11 and 12 of the Rule 30(b)(6) deposition notice issued on March 16, 2021 (Halloin Decl. Ex. D); and

3. Deny Defendants' motions to quash the subpoenas seeking documents from SVA Certified Public Accountants, S.C., Charles G. Vogel, and Godfrey & Kahn, Esq. (DNs 37, 38; *see also* Halloin Decl. Exs. J–L.)

Dated April 12, 2021.

<div style="margin-left:40%">

HALLOIN LAW GROUP, S.C.
Attorneys for Plaintiffs Roumann Inc. and
Ronald Rousse


s/ Scott R. Halloin
Scott R. Halloin
Wis. State Bar No. 1024669
James J. Irvine
Wis. State Bar No. 1088726

</div>

HALLOIN LAW GROUP, S.C.
839 North Jefferson Street
Suite 503
Milwaukee, Wisconsin 53202
p 414-732-2424
f  414-732-2422
shalloin@halloinlawgroup.com
jirvine@halloinlawgroup.com