UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

ROUMANN CONSULTING INC. and
RONALD ROUSSE,

    Plaintiffs,

  v.                                 Case No. 2:18-cv-01551-LA

SYMBIONT CONSTRUCTION, INC.,
SYMBIONT HOLDING COMPANY, INC.,
SYMBIONT SCIENCE, ENGINEERING AND
CONSTRUCTION, INC.,
THOMAS C. BACHMAN,
SONYA K. SIMON, ESQ.,
EDWARD T. MANNING, JR., and
TIMOTHY P. NELSON,

    Defendants.

## SYMBIONT DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Andrew S. Oettinger
State Bar No. 1053057
Christie B. Carrino
State Bar No. 1097885
Godfrey & Kahn, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone:  414-273-3500
Fax:  414-273-5198
Email:  aoettinger@gklaw.com
ccarrino@gklaw.com

*Attorneys for Defendants*

# INTRODUCTION

Despite the nature of this case, Roumann never identified or produced copies for review of what it contends to be "Confidential Information." In briefing these motions, Roumann contends that its "Confidential Information" includes all documents relating to projects that Symbiont performed, including its own contracts, subcontracts, owner drawings, bid materials, emails, and training materials, and that Symbiont's use of a database called Procore is tantamount to Symbiont using and profiting from Roumann's Confidential Information, causing it damages.  Further, Roumann argues its claims notwithstanding the existence of an integrated contract, and while conceding that Roumann still may access its "Confidential Information" (yet still contends it was converted). These are all legal deficiencies which are appropriately disposed of on summary judgment and Roumann has failed to demonstrate any genuine issues of fact material to these issues. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (Rule 56 requires plaintiff to present evidence of evidentiary quality demonstrating a genuine issue of material fact).

## RESPONSE TO ROUMANN'S CHARACTERIZATION OF THE FACTUAL BACKGROUND.

**I. The parties did not modify the Independent Contactor Agreement, and Symbiont has never contended to the contrary.**

Whether the parties modified the Independent Contractor Agreement was the subject of briefing and a decision in the 2017 case, and Roumann's unsuccessful arguments contending modification in that case have no bearing on the issues now before the Court. The terms of the Independent Contractor Agreement are undisputed, and the parties did not modify them. (DKT 105, 2:17-cv-01407-LA, pp. 9-11.) And to be sure, despite the exhaustive treatment Roumann provides in its briefing regarding modification, Symbiont has never argued in either case that the contract was modified. (*Id.*; Resp PSAF 45.) There is no dispute as to the terms of the contract. After litigating it for over four years, these remaining disputes are ripe for determination.

## II. Symbiont did not hide its efforts to secure projects in the two-year period following termination, and Roumann was aware of those efforts.

Roumann devotes significant attention to its claim that it was unaware of Symbiont's efforts to secure projects under the Independent Contractor Agreement in the two-year period following termination. (Resp. Br. 5-8.) When viewed in light of all prior pleadings and testimony, that contention strains credibility beyond its breaking point. Not that it needed to, but Symbiont advised Roumann in the August 21, 2017 notice of termination letter of its intention to "continue to book profitable projects with the clients identified above [Menards, Kroger, and the others]" which Roumann's counsel acknowledged the next day, stating: "Roumann's concerned that *future* profits associated with current *and future* projects will be significantly eroded without the ongoing involvement and expertise of Roumann in these projects." (DPFF 30-31, 37) Indeed, these concerns were the subject of Roumann's claims in the 2017 lawsuit, where Roumann contended, among other things, that the contract required Symbiont to bid, win, and perform projects post-termination in a manner dictated by Roumann. (DPFF 38-40.)

Further, the Agreement itself expressly contemplates that Symbiont would pursue and secure such work. Section 4.2(b) discusses and expressly contemplates projects that are accepted by Symbiont "during the term of the Agreement or during the two (2) year period following the effective date of termination of the Agreement."

Notwithstanding the above, Roumann's Response Brief contends that "T.V. John revealed for the first time, that it was actually engaged in active bidding" during the course of a December 13, 2018 Rule 30(b)(6) deposition." (Resp. Br., 7.) This is not a material fact in that it is neither material nor a fact. In addition to the disclosures above, Roumann's October 2, 2018 complaint in this case identifies 33 specific projects as those which Symbiont allegedly "wrongfully used Roumann Consulting's Confidential Information to bid on." (Dkt. 1 ¶¶ 129-130). Thus, Roumann

3

Case 2:18-cv-01551-LA   Filed 05/27/22   Page 3 of 17   Document 111

now contends that it learned about the bidding activity for the first time two months after it had sufficient information to draft and plead detailed allegations about that same bidding activity. Such contention belies both logic and credibility.

Roumann also contends that Symbiont effectively concealed its bidding activity through the commission spreadsheets it provided to Roumann – spreadsheets which tracked the status and historic finances of *awarded* projects subject to the Independent Contractor Agreement. (Resp. Br. 7-8.) Symbiont acknowledges that the commission spreadsheets did not contain information about future projects – that was not their purpose. As the documents bear out, the Exhibit 97(a) that Symbiont produced in the first case was provided in response to Rule 30(b)(6) deposition topics. Exhibit 97(a) is labeled "KROGER, THE FRESH MARKET, MENARDS PROJECTS AFTER 8/21/17." (Halloin Decl. Dkt 98-3.) Roumann characterizes this exchange, where Symbiont provided Rule 30(b)(6) testimony in response to a question, as demonstrating Symbiont was "lying" about bidding activity. (Resp. Br. 7.) Symbiont did not lie about anything, and the commission spreadsheet is not germane to the issues before the Court.[1]

Factual inaccuracies aside, whether Roumann was aware Symbiont was bidding projects subject to the commission structure of the Independent Contractor Agreement is immaterial and not relevant to the determination of whether Symbiont improperly used Roumann's Confidential Information causing damages. Roumann's awareness is not an element to any of its claims.

III. **Symbiont provided timely, responsive, and complete responses to Roumann's discovery requests, even when overbroad.**

The response brief accuses Symbiont of providing "wildly inaccurate discovery responses" and "delaying producing thousands of responsive documents that were contained on its computer

---

[1] Roumann's characterization of this alleged concealment is not supported by its statement of additional facts or by evidence.

system for more than a year" culminating in overwhelming evidence of improper use of confidential information. (Resp. Br. 5, 17.) These are serious accusations mandating a response, which Symbiont details in its Response to Roumann's Statement of Additional Fact 30. As detailed therein, and as evidenced by the documentary record, Roumann's aspersions do not create a material dispute of fact, and to the contrary are easily exposed as misleading rhetoric.[2]

Roumann does not complain that Symbiont failed to produce requested documents, but rather, that Symbiont's production of all Procore files for 43 projects Roumann identified (Document Request No. 4) constitutes evidence of Symbiont's improper use of Roumann's Confidential Information.[3] (Resp. Br. 8-9.) Symbiont's mere act of responding to document requests does not constitute evidence of improper use of Confidential Information, nor does it remedy Roumann's failure to specify what Confidential Information was allegedly accessed.

Nor does Symbiont's response to the document request constitute an admission of use or possession of Confidential Information. Roumann requested "all Documents and Communications, including but not limited to customer lists, subcontractor lists, bid documents, technical information and customer proposals, scopes of work, historic data, bid summaries, contracts, and proposed contracts" for 41 project opportunities. (Resp. PSAF 30-31.) Symbiont objected, and ultimately agreed to produce the entirety of its files – exporting all files and folders from Procore for the requested projects. (Resp. PSAF 30.) Symbiont also made paper copies of additional documents available for inspection and copying by counsel. (*Id.*) The request notably did not use

---

[2] Roumann's characterization of discovery issues are not supported by its statement of additional facts.

[3] Notwithstanding the lack of any discovery issue, Roumann cites in a footnote to *Mohns, Inc. v. BMO Harris Bank*, 2021 WI 8, 395 Wis. 2d 421, 954 NW.2d 339, in which the Wisconsin Supreme Court upheld a discovery sanction. Other than Roumann's failure to put forth evidence of its claims and examples of its Confidential Information there is no discovery issue, and the only motion to compel in this case was resolved in Symbiont's favor. [Dkt. 67.] The *Mohns, Inc.* case has no bearing here other than its confirmation that "if parties enter into a valid, enforceable contract, then unjust enrichment does not apply." *Id.* ¶ 48.

5

the term Confidential Information, yet Roumann contends that by producing documents responsive to this request Symbiont admits that such documents constitute Confidential Information. Again, such contention is an immaterial distraction.

## ARGUMENT

I. **Roumann fails to create a dispute of material fact for Symbiont's arguments that (1) Roumann has not sufficiently identified the allegedly Confidential Information or (2) the few documents identified do not constitute Confidential Information.**

Roumann does very little to attempt to rebut Symbiont's arguments that Roumann has not provided evidence regarding its allegedly Confidential Information in order to survive summary judgment. With regard to the confidential nature of the documents, Roumann's only arguments regarding the case law Symbiont cited in its opening brief are to distinguish them as trade secret cases. However, Roumann ignores that, in evaluating the confidential nature of alleged confidential information, trade secret law opining on whether a document is confidential is instructive to the analysis. *See Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-C-1046, 2013 WL 6255689, at *5, 8, 11 (E.D. Wis. Dec. 4, 2013) (denying claim under contractual confidentiality provision where information was known to third parties, alongside denying trade secrets claim, and noting that to be a trade secret documents must be kept confidential.)

Additionally, Roumann puts too much stock in *Burbank Grease*—Symbiont is not arguing that that, as a matter of law, Roumann's claims fail because they are abrogated by the Wisconsin Trade Secrets Act. Instead, Symbiont is arguing, as with any summary judgment motion, that Roumann has not presented evidence that would allow such claim to go to trial as a matter of law. That *Burbank Grease* cautioned that the Wisconsin Supreme Court would not analyze extra-jurisdictional case law to determine whether the Wisconsin Trade Secrets Act abrogated common law claims regarding confidential information does not mean that a court cannot consider extra-jurisdictional case law in applying facts to claims regarding misuse of confidential information.

Indeed, all *Burbank Grease* did was leave open the ability for a plaintiff to bring common law claims regarding confidential information, it did not otherwise hold that such claims are always actionable as a matter of law, nor did the court analyze whether the underlying information actually constituted confidential information. *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶¶ 13-33, 294 Wis. 2d 274, 717 N.W.2d 781. *Burbank Grease* merely confirms Roumann could bring common law claims, which Symbiont does not dispute.

What *Burbank Grease* does not do is provide Roumann the ability to survive summary judgment where it has neither provided the Court nor Symbiont enough information to discern what specific Confidential Information is at issue, or how the broad categories of documents are "confidential" such that they can constitute Confidential Information. To rebut Symbiont's contentions on this point, all Roumann does is refer to Section II(D) of its response brief to state that it produced evidence of what confidential information is. However, all that brief section provides is that Roumann contends that contact lists and pricing information that were put into Procore is Roumann's Confidential Information.

As explained throughout Symbiont's briefing, Roumann's *ipse dixit* approach to demonstrating that the information in Procore constitutes Confidential Information is insufficient. Rousse has *never used* Procore, and Roumann has put forward no concrete evidence of the use of Confidential Information through Procore or otherwise. (Resp. PSAF 33.) Roumann's entire claim is based on testimony unsupported by documentary evidence and full of conclusory statements that all or most of the information in Procore is Roumann's Confidential Information and that Procore was accessed and possibly used on various projects. (*Id.*) Roumann has not put forth any evidence that any piece of allegedly Confidential Information was actually used, or importantly, that any such use damaged Roumann. And Roumann has ignored the fact that Procore also houses files and documents for awarded projects—documents that belong to Symbiont as the party to the general

contract and subcontracts—which contain the type of information Roumann contends is confidential information, such as project costs, client contacts, and subcontractor contacts. (Resp. PSAF 23.) But Roumann has to ignore it to keep up the narrative that everything in Procore constitutes Confidential Information, because Roumann has failed to specifically identify what that information is and cannot otherwise argue its claims.

Roumann's contentions that Symbiont was "trying to avoid its own document production" at Rousse's deposition and instead asked Rousse to precisely identify tangible examples of the allegedly Confidential Information (Resp. Br. at 16.) only underscore that Roumann believes it is Symbiont's burden to show Roumann and the Court what the Confidential Information is, rather than specifically identify the allegedly Confidential Information. It is not Symbiont's job to put forward evidence of what constitutes Confidential Information—that is Roumann's burden, a burden that he has not satisfied to proceed to trial. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (dismissing claim that was "both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret.") and *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-C-1046, 2013 WL 6255689, at *6-11 (E.D. Wis. Dec. 4, 2013) (denying misappropriation of confidential information claim and corresponding contract claim in part due to plaintiff's failure to "specifically identify" the confidential information).[4] This failure to specifically identify Confidential Information is both an independent basis to dismiss Roumann's claims as a matter of law and a major failing highlighting the issues with the "evidence" Roumann now puts forward. As such Roumann's claims should be dismissed.

---

[4] Roumann also argues that the Independent Contractor Agreement's definition of Confidential Information is not "high level." (Resp. Br. at 13-14.) However characterized, Roumann cannot simply use that definition to identify its Confidential Information. As *Idx Systems* and *Marine Travelift* make clear, Roumann is required to put forward specific examples of its Confidential Information rather than categories of Confidential Information, such as the categories contained in the Independent Contractor Agreement's definition.

## II. Roumann feigns confusion where there is none regarding Rousse's employment.

The parties and the Court are well aware that Rousse was an employee of T.V. John, now Symbiont Construction, prior to Rousse forming Roumann and entering into the Independent Contractor Agreement with T.V. John.[5] While Roumann now contends that it disputes the dates of Mr. Rousse's employment, this dispute is not material in that the start and end dates it contends are correct in its response brief vary only by months from what the Court had previously deemed an undisputed fact in the earlier action. (Resp. PSAF 1.)

Roumann also puts forward immaterial "facts" regarding Rousse's time as an employee, stating that collecting Confidential Information was not something Rousse did as part of his employment, Rousse never billed T.V. John for time spent collecting Confidential Information, and Rousse never shared Confidential Information while he was an employee. (Resp. Br. at 22.) As a preliminary matter the concept of Confidential Information was not in existence at the time Rousse was an employee—it makes its first appearance in the Independent Contractor Agreement. (Resp. PSAF 2.) Even putting that aside, it is disingenuous for Roumann to argue that collecting Confidential Information, which Roumann contends is information used to bid on projects, was not part of his bidding and estimating work at T.V. John. (*Id.*) How could he do this work without compiling subcontractor and client lists and pricing? Equally puzzling is the statement that Rousse did not bill T.V. John for time spent collecting that information. Why would a salaried employee bill his employer for time spent doing his salaried job? Finally, Rousse admits that he shared information with T.V. John, but even if he did not, that information ended up on T.V. John's final contracts with the clients and subcontractors for awarded projects, which are T.V. John's

---

[5] Symbiont will use T.V. John here to avoid any perceived confusion.

9

Case 2:18-cv-01551-LA   Filed 05/27/22   Page 9 of 17   Document 111

documents. (Resp. PSAF 23.) Thus, none of these purported facts are material with regard to whether Rousse created the confidential information while an employee.

Roumann's legal arguments in this regard are equally perplexing. In discussing Restatement (Third) of Unfair Competition Comments (a) and (e), Roumann seemingly argues that Rousse was not an employee of T.V. John for purposes of the Restatement (notwithstanding the fact that he has admitted to being an employee of T.V. John) because Rousse later formed Roumann and entered into the Independent Contractor Agreement with T.V. John. (Resp. Br. at 22-23.) Roumann does not further explain this contention. Yet Roumann carries on the contention in its discussion of the case law Symbiont cited in support of its argument that documents created by an employee during the course of his employment are property of the employer. It seems that this is one more instance where Symbiont and the Court are simply supposed to take Roumann's arguments as fact or law without support. Suffice it to say, Symbiont has not found any support in the law for this position. Thus Roumann's arguments here do not preclude summary judgment on the basis that the allegedly Confidential Information was created when Rousse was an employee of T.V. John.

### III. Roumann's arguments surrounding what the Independent Contractor Agreement does or does not require do not preclude summary judgment.

Roumann maintains that the "heart of the dispute" is whether the Independent Contractor Agreement prohibits Symbiont from bidding projects for the enumerated clients following termination. (Resp. Br. at 24.) Roumann then states that the Agreement prohibits Symbiont from bidding projects and refers the Court to Section II(B) of the Response Brief. However, all that Section II(B) does is argue that the Independent Contractor Agreement did not impose an obligation on Symbiont to solicit new projects and that the Independent Contractor Agreement otherwise prevented Symbiont from using Confidential Information seemingly in perpetuity.

In so arguing, Roumann affords equal treatment to the two, post-termination time periods: the two years following termination of the Independent Contractor Agreement and the rest of time following the expiration of the two-year period. However, beginning with the latter, if Roumann contends that Symbiont was never able to use Roumann's allegedly Confidential Information for all of time, such interpretation would render the confidentiality provision null and void as an illegal restraint of trade. *See Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218, 267 N.W.2d 242 (1978). This would be the case whether or not Symbiont Construction continued to bid big box stores following the termination of the two-year period.

If Roumann's focus is instead on the two-year post-termination period, any argument that Symbiont was not entitled to use the allegedly Confidential Information fails because the Agreement authorizes Symbiont to use the Confidential Information "to the extent necessary to perform its obligations hereunder." (DPFF 19.) Symbiont's central obligation during the two-year post-termination period was to continue paying Roumann 30% of the Net Profit Realized for any projects completed by Symbiont for Menards, the Fresh Market or Kroger, whether or not those projects were "obtained and/or solicited by Roumann." (DPFF 15.) Indeed, this post-termination payment provision provides clarity that amounts would be due "provided the project is accepted by the Company during the term of the Agreement <u>or during the two (2) year period following the effective date of termination of the Agreement</u>." (*Id.*) (emphasis added.)

As explained in greater detail in Symbiont's Response Brief to Roumann's Motion for Partial Summary Judgment, this payment term is the essential object of the post-termination provisions, and the only way for Symbiont to fulfill those obligations was to bid and accept work for the clients enumerated in the Independent Contractor Agreement following termination. That is exactly what Roumann argued for in the 2017 case—maximizing those payments. (Def. Resp. Br.,17.) Further, Roumann only raised this theory of misappropriation after the two-year period

11

expired and Symbiont had already bid on, and secured work, and so has either waived it or is equitably estopped from now raising it. *E.g., Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67 ¶ 33, 291 Wis. 2d 259, 715 N.W.2d 620 (2006).

Thus, nothing in the Agreement prohibits Symbiont from using Confidential Information during the two-year post-termination period or anytime thereafter. And to the extent that it did, Roumann has waived or is equitably estopped from now raising this argument by not alerting Symbiont to this supposed breach during the two-year time period, itself. Finally, Roumann has failed to produce admissible evidence that Symbiont used specific Confidential Information to bid during this period (it did not).

**IV. Symbiont is not required to file a *Daubert* Motion to demonstrate that Roumann has not proven either the existence or the amount of damages.**

Roumann has not addressed any of Symbiont's arguments that Roumann has failed to prove the fact of damage. Further with regard to the amount of damages, a *Daubert* motion is not required to address legal arguments that would preclude a theory of damages. Indeed, this is exactly what Symbiont did in the 2017 case, and the Court agreed that Roumann and Rousse's damages theories were not viable in that action. (2017 Action, ECF No. 105, pp. 8-15.) Nor is Roumann's current damages theory viable here.

Roumann contends that Symbiont is attempting to "imply" that VanderBloemen did the same analysis that the Court previously stated was not available in this action in the Court's previous discovery order (Resp. Br. at 26.) Symbiont is not implying anything. The damages theory that Mr. VanderBloemen puts forward is exactly that which the Court ruled was unavailable to Plaintiffs in this action. (DPFF 86-91.)

To combat this reality, Roumann states in conclusory fashion that Mr. VanderBloemen did four separate types of valuations but ignores that each of those four valuations suffers from the

12

same fatal flaw. Each valuation conflates the value of Roumann's Confidential Information with the value of T.V. John as a starting point—nowhere does VanderBloemen calculate the value of the Confidential Information as a subset of the value of T.V. John. Roumann also cites to mischaracterized testimony of Symbiont's disclosed expert, Mr. Stringer, that is taken out of context to attempt to bolster the propriety of VanderBloemen's report. However, as the context shows, Mr. Stringer's testimony is not that the value of an intangible asset is the same as the value of the company holding that asset. He only testifies that there are other means to value an intangible asset without the balance sheet and income statement. (4/21/2022 Halloin Decl. at Ex. 7, Stringer Dep. at 59:11-60:5.)

V. **Roumann has no claim against Symbiont Holding or Symbiont Science.**

Roumann's sole argument that it has a claim against Symbiont Holding and Symbiont Science is based on Roumann's unsupported contention that individuals employed by those entities had access to Procore, and that such access constitutes a misuse of the allegedly Confidential Information. As explained above, simply having access to Procore does not in any way support a claim for misuse of Confidential Information. Roumann has not shown that individuals employed by Symbiont Holding or Symbiont Science even used the alleged Confidential Information in Procore, let alone provided any specific evidence surrounding that use such that it would constitute misuse. (Resp. PSAF 41.) The fact remains that Roumann took no discovery on Symbiont Holding or Science and that there is no material dispute of fact that would preclude entry of summary judgment dismissing the claims against them.

VI. **Roumann cannot maintain its conversion claim.**

As Symbiont described in its Response to Roumann's Motion, Roumann's conversion claims fail as a matter of law, and none of the cases Roumann cites in support (or employs in its Response brief) overcome this failure. Neither *Carpenter* nor *FMC Corp* are decided under

13

Case 2:18-cv-01551-LA   Filed 05/27/22   Page 13 of 17   Document 111

Wisconsin law, both cases are factually distinguishable, and *FMC Corp* even makes clear that where the plaintiff maintains a copy of the allegedly converted property, there is no claim for conversion. (Defs.Resp. Br., 20-21.)

Further, Roumann's attempt to use *Midwestern Helicopter* for the proposition that all that is required for conversion is control or exceeding authorized use, is at best misleading. (Resp. Br. at 29-30.) While control is unquestionably an element of conversion, such control or exceeding authorized use must "result[] in serious interference with the owner's rights to <u>possess</u> the property," the third element for conversion. *Midwestern Helicopter*, 2013 WI App 126, ¶ 9, 351 Wis. 2d 211, 839 N.W.2d 167 (emphasis added). The Restatement Section Roumann quotes is in accord. *Id.* at ¶ 13 (quoting Restatement (Second) of Torts § 228) ("One who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose <u>right to control the use of the chattel is thereby seriously violated</u>.") (emphasis added). As explained in Symbiont's Response brief, it is undisputed that Roumann continued to possess and use the allegedly Confidential Information, and so that third element is not met. (Defs. Resp. Br., 19.)

Nor is Roumann's citation to *Management Computer Services, Inc.* dispositive, as the Court in that case did not opine on the legal sufficiency of the claim—it only ruled as to the dispute over the amount of damages awarded for the conversion claim, reinstituting the full award that had been reduced by the trial court. *Mgmt. Comp. Servs., Inc. v. Hawkins, Ash Baptie & Co.*, 206 Wis. 2d 158, 174-75, 189, 557 N.W.2d 67 (1996). And in any event, Roumann is mistaken that *Weather Shield Manufacturing,* the case Roumann attempts to use *Management Computer Services* to combat, does not contain the cited proposition. Just following the section pertaining to the Computer Crimes Act, and still on page 5 of the opinion, the Court provides its analysis of the Conversion Claim, holding that a claim for misappropriation of intellectual property "fails to state

14

a claim for conversion under Wisconsin law." *Weather Shield Mfg., Inc. v. Drost*, 2018 WL 3824150, at *5 (W.D. Wis. Aug. 10, 2018). Moreover, the Court held that the fact plaintiff alleged hard copies were also taken did nothing to change the result, unless the plaintiff "intend[ed] to claim damages for the paper and toner used to print the documents." *Id.* The information on any hard copy documents is what Roumann maintains is converted, and so the result is the same here. Roumann's claim for conversion fails.

**VII. Roumann's unjust enrichment claim must be dismissed as to all Symbiont entities, not just Symbiont Construction.**

Roumann concedes that the unjust enrichment claim cannot lie against Symbiont Construction by virtue of the Independent Contractor Agreement.[6] However, the claim is equally inapplicable to Symbiont Holding and Symbiont Science. As a preliminary matter, the basis for the claim is Roumann's unsupported contention that individuals at these companies had access to Procore and so were unjustly enriched by the allegedly Confidential Information found in Procore. However, nowhere does Roumann explain how Symbiont Science and Holding were unjustly enriched by having access to Procore, and importantly what benefit was conferred.

An unjust enrichment claim requires a benefit conferred, an appreciation or knowledge of the benefit, and "acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 83 Wis. 2d 686, 689, 266 N.W.2d 361. Importantly, "[i]t is not enough to establish that a benefit was conferred and retained; the retention must be inequitable." *Id.* at 690. A benefit is not inequitable where a defendant simply "knowingly acquiesced" to the performance of

---

[6] The unjust enrichment claims against the other defendants should also be dismissed on this basis, as "unjust enrichment is an obligation enforced in the absence of *any agreement*." *Beer Capitol Distrib. v. Guiness Bass Import Co.*, 290 F.3d 877, 881 (7th Cir. 2002) (emphasis added) (dismissing unjust enrichment claim and noting that lack of compensation has no bearing on the analysis where the party opted to sue before payment could be made). Here, even assuming a benefit conferred, Roumann earned 30% Net Profit realized under the Agreement, and Roumann's choice to bring a lawsuit instead of accepting payment does not render inequitable the retention of that supposed benefit by any defendant.

15

the work, and liability will not be imposed "on one who did not request the work and may not have desired it." *Id.* at 694. Such is the case here. Roumann has done nothing to show that Symbiont Science or Symbiont Holding did anything to request that Roumann's allegedly Confidential Information be put into Procore or even wanted that information in Procore. Indeed, Roumann has not shown that individuals employed at Symbiont Science or Symbiont Holding even knew that Roumann's allegedly Confidential Information was in Procore. But even if they did, such knowing acquiescence is not a basis for liability.

Further, Roumann has not shown that any benefit was conferred on Symbiont Science or Symbiont Holding. Roumann has argued that the value of its Confidential Information was bottomed on the fact that the subcontractors had experience with building big box stores. (Roumann Br. DKT 80, at 2.) Yet Roumann has not alleged that either Symbiont Science or Symbiont Holding was or is in the business of building big box stores. Thus, Roumann has not shown that simply having access to the information in Procore was a benefit to either entity.

At bottom, having access to Procore is not a benefit that Roumann conferred on Symbiont Science or Symbiont Holding. Roumann has not shown that either of these entities used the allegedly Confidential Information such that they would have even recognized a benefit. As such, the unjust enrichment claim fails as to all defendants.

## CONCLUSION

For the reasons described herein, and in their other briefing on the cross-motions for summary judgment, Symbiont respectfully requests the Court grant their motion for summary judgment and enter judgment in favor of all defendants for all claims in this action.

Dated this 27th day of May, 2022.

> By: */s/ Andrew S. Oettinger*
> Andrew S. Oettinger
> State Bar No. 1053057
> Christie B. Carrino
> State Bar No. 1097885
> Godfrey & Kahn, S.C.
> 833 East Michigan Street, Suite 1800
> Milwaukee, WI 53202-5615
> Phone: 414-273-3500
> Fax: 414-273-5198
> Email: aoettinger@gklaw.com
> ccarrino@gklaw.com
>
> *Attorneys for Defendants*