# United States District Court
# Eastern District of Wisconsin (Milwaukee)
# CIVIL DOCKET FOR CASE #: <u>2:18–cv–01551–LA</u>

| | |
|---|---|
| Roumann Consulting Inc et al v. Symbiont Construction Inc et al | Date Filed: 10/02/2018 |
| Assigned to: Judge Lynn Adelman | Date Terminated: 09/30/2022 |
| Demand: $9,999,000 | Jury Demand: None |
| related Case:  2:17–cv–01407–LA | Nature of Suit: 290 Real Property: Other |
| Cause: 28:1332 Diversity–(Citizenship) | Jurisdiction: Diversity |

**<u>Plaintiff</u>**

**Roumann Consulting Inc**  represented by  **James J Irvine**
Halloin Law Group SC
839 N Jefferson St – Ste 503
Milwaukee, WI 53202–3732
414–732–2424
Fax: 414–732–2422
Email: jirvine@halloinlawgroup.com
*ATTORNEY TO BE NOTICED*

**Molly Stacy Fitzgerald**
Halloin Law Group SC
839 N Jefferson St – Ste 503
Milwaukee, WI 53202–3732
414–727–2824
Fax: 414–732–2422
Email: mfitzgerald@halloinlawgroup.com
*ATTORNEY TO BE NOTICED*

**Scott R Halloin**
Halloin Law Group SC
839 N Jefferson St – Ste 503
Milwaukee, WI 53202–3732
414–732–2424
Fax: 414–732–2422
Email: shalloin@halloinlawgroup.com
*ATTORNEY TO BE NOTICED*

**Sheila L Shadman Emerson**
Halloin Law Group SC
839 N Jefferson St – Ste 503
Milwaukee, WI 53202–3732
414–732–2424
Fax: 414–732–2422
Email: sshadmanemerson@halloinlawgroup.com
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Ronald Rousse**                    represented by  **James J Irvine**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Stacy Fitzgerald**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott R Halloin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sheila L Shadman Emerson**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Symbiont Construction Inc**        represented by  **Andrew S Oettinger**
Godfrey & Kahn SC
833 E Michigan St – Ste 1800
Milwaukee, WI 53202–5615
414–273–3500
Fax: 414–273–5198
Email: aoettinger@gklaw.com
*ATTORNEY TO BE NOTICED*

**Christie B Carrino**
Godfrey & Kahn SC
833 E Michigan St – Ste 1800
Milwaukee, WI 53202–5615
414–273–3500
Fax: 414–287–5198
Email: ccarrino@gklaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Symbiont Holding Company Inc**     represented by  **Andrew S Oettinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christie B Carrino**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Symbiont Science Engineering and   represented by  **Andrew S Oettinger**
Construction Inc**                   (See above for address)
*ATTORNEY TO BE NOTICED*

**Christie B Carrino**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas C Bachman**                    represented by    **Andrew S Oettinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christie B Carrino**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sonya K Simon**                    represented by    **Andrew S Oettinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christie B Carrino**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Edward T Manning, Jr**                    represented by    **Andrew S Oettinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christie B Carrino**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Timothy P Nelson**                    represented by    **Andrew S Oettinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christie B Carrino**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|------------|---|------|-------------|
| 10/02/2018 | 1 | | COMPLAINT against All Defendants by Ronald Rousse, Roumann Consulting Inc. ( Filing Fee PAID $400 receipt number 0757−2934872) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Civil Cover Sheet, # 5 Summons Symbiont Construction, Inc., # 6 Summons Symbiont Holding Company, Inc., # 7 Summons Symbiont Science, Engineering and Construction, Inc., # 8 Summons Thomas C. Bachman, # 9 Summons Sonya K. Simon, # 10 Summons Edward T. Manning, Jr, # 11 Summons Timothy P. |

| | | | |
|---|---|---|---|
| | | | Nelson)(Halloin, Scott) |
| 10/02/2018 | 2 | | DISCLOSURE Statement by All Plaintiffs. (Halloin, Scott) |
| 10/02/2018 | 3 | | Magistrate Judge Jurisdiction Form filed by All Plaintiffs. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Halloin, Scott) |
| 10/02/2018 | | | NOTICE Regarding assignment of this matter to Magistrate Judge William E Duffin ;Consent/refusal forms for Magistrate Judge Duffin to be filed within 21 days;the consent/refusal form is available on our website (jcl) |
| 10/03/2018 | | | Summons Issued as to Thomas C Bachman, Edward T Manning, Jr, Timothy P Nelson, Sonya K Simon, Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc. (mlm) |
| 10/15/2018 | | | Case reassigned to Judge Lynn Adelman. Magistrate Judge William E Duffin no longer assigned to the case. (mlm) Modified on 12/11/2020 (kmm). |
| 11/28/2018 | 4 | | MOTION to Dismiss by All Defendants. (Oettinger, Andrew) |
| 11/28/2018 | 5 | | BRIEF in Support filed by All Defendants re 4 MOTION to Dismiss *Pursuant to Rules 12(b)(6) and 16(f)*. (Oettinger, Andrew) |
| 11/28/2018 | 6 | | DISCLOSURE Statement by All Defendants. (Oettinger, Andrew) |
| 12/05/2018 | 7 | | STIPULATION *(Joint) for Briefing Schedule* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 12/05/2018 | 8 | | NOTICE of Appearance by Christie B Carrino on behalf of All Defendants. Attorney(s) appearing: Christie B. Carrino (Carrino, Christie) |
| 12/06/2018 | 9 | | ORDER granting 7 Stipulation for Briefing Schedule signed by Judge Lynn Adelman on 12/6/18. (cc: all counsel)(jad) |
| 01/09/2019 | 10 | | RESPONSE to Motion filed by All Plaintiffs re 4 MOTION to Dismiss . (Halloin, Scott) |
| 01/09/2019 | 11 | | AFFIDAVIT of Scott R. Halloin *in Support of Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Halloin, Scott) |
| 01/09/2019 | 12 | | DECLARATION of Ronald Rousse (Attachments: # 1 Exhibit 1)(Halloin, Scott) |
| 02/01/2019 | 13 | | REPLY BRIEF in Support filed by All Defendants re 4 MOTION to Dismiss . (Attachments: # 1 Exhibit Simpson v Ha–Lo Industries Decision and Order Feb 21 2001)(Oettinger, Andrew) |
| 08/01/2019 | 14 | | ORDER signed by Judge Lynn Adelman on 8/1/19. IT IS ORDERED that the defendants' motion to dismiss 4 is GRANTED IN PART and DENIED IN PART. The motion is granted as to all claims except for claims based on Symbiont's alleged misuse of the plaintiffs' confidential information. (cc: all counsel) (jad) |
| 08/22/2019 | 15 | | ANSWER to 1 Complaint,, by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc.(Oettinger, |

| | | | |
|---|---|---|---|
| | | | Andrew) |
| 09/27/2019 | 16 | | SCHEDULING ORDER signed by Judge Lynn Adelman on 9/27/19. IT IS ORDERED that a telephonic Fed. R. Civ. P. 16(b) scheduling conference will be held on 11/8/19 at 11:30 a.m. The court will initiate the call. The participation of the attorney who will be handling the case is required and their telephone number should be provided in the Rule 26(f) report. (cc: all counsel)(jad) |
| 10/31/2019 | 17 | | *Joint* REPORT of Rule 26(f) Plan by All Plaintiffs. (Halloin, Scott) |
| 11/08/2019 | 18 | | Minute Entry for proceedings held before Judge Lynn Adelman: Scheduling Conference held on 11/8/19. Court will approve the parties' proposed discovery schedule. Plaintiff indicates willingness to mediate with Judge Adelman regarding this case and Case 17–C–1407. Counsel for defendants will check with clients and inform court whether it also agrees to mediation with Judge Adelman. (jad) |
| 11/08/2019 | 19 | | SCHEDULING ORDER: signed by Judge Lynn Adelman on 11/8/19. Amended Pleadings due by 1/10/20. Discovery due by 10/9/20. Plaintiff's Expert Witness List due by 4/3/20. Defendant's Expert Witness List due by 7/10/20. Dispositive Motions due by 10/23/20. Rule 26(a) Disclosures to be exchanged by 12/3/19. (cc: all counsel)(jad) |
| 11/18/2019 | 20 | | LETTER from Andrew S. Oettinger *Regarding Request for Mediation*. (Oettinger, Andrew) |
| 12/27/2019 | 21 | | Rule 7(h) Expedited Non–Dispositive MOTION for Judgment *(Entry of) Against Ron Rousse and in Favor of the Individual Defendants* by All Defendants. (Attachments: # 1 Text of Proposed Order)(Oettinger, Andrew) |
| 01/03/2020 | 22 | | BRIEF in Opposition filed by All Plaintiffs re 21 Rule 7(h) Expedited Non–Dispositive MOTION for Judgment *(Entry of) Against Ron Rousse and in Favor of the Individual Defendants* . (Halloin, Scott) |
| 01/03/2020 | 23 | | DECLARATION of Ronald Rousse *in Support of Plaintiffs' Response in Opposition to Defendants' Motion for Entry of Judgment Against Ron Rousse and in Favor of the Individual Defendants* (Halloin, Scott) |
| 01/24/2020 | 24 | | SCHEDULING ORDER: signed by Judge Lynn Adelman on 1/24/20. IT IS ORDERED that a telephonic status conference will be held on February 14, 2020 at 11:30 a.m. The court will initiate the call. Counsel must email the court prior to the call at AdelmanPO@wied.uscourts.gov to provide contact information. (cc: all counsel)(jad) |
| 02/14/2020 | 25 | | Minute Entry for proceedings held before Judge Lynn Adelman: Status Conference held on 2/14/2020. Parties agree to mediate with a private mediator in early April. Court sets telephonic status conference for April 20, 2020 at 11:30 a.m. If the mediation is successful, the parties should inform the court, which will then cancel the status conference. Likewise, if the mediation cannot be completed by April 20, the parties shall inform the court so that the status conference can be rescheduled to a later date. Pending deadlines in Case 18–C–1551 are suspended pending the outcome of mediation. The court DENIES the plaintiffs' motion for reconsideration 107 in an oral ruling that was read into the record. (Court Reporter Thomas Malkiewicz) (jad) |

| | | | |
|---|---|---|---|
| 04/14/2020 | 26 | | LETTER from Scott R. Halloin *regarding mediation*. (Halloin, Scott) |
| 04/16/2020 | | | Set/Reset Hearings: April 20, 2020 Telephonic Status Conference **reset** for 7/9/2020 at 11:15 AM. (jad) |
| 07/09/2020 | 27 | | Minute Entry for proceedings held before Judge Lynn Adelman: Status Conference held on 7/9/2020. Parties report that mediation effort did not result in resolution of claims. The parties will confer and submit a proposed scheduling order governing discovery that tracks the scheduling order entered prior to COVID–19 pandemic. The parties note that two motions are pending and fully briefed. The court will decide them shortly. (jad) |
| 07/17/2020 | 28 | | ORDER signed by Judge Lynn Adelman on 7/17/20 that the defendants' motion to enter judgment under Rule 54(b) 21 is DENIED. (cc: all counsel) (jad) |
| 08/11/2020 | 29 | | Stipulated MOTION for Protective Order by Thomas C Bachman, Edward T Manning, Jr, Timothy P Nelson, Sonya K Simon, Symbiont Construction Inc, Symbiont Holding Company Inc. (Attachments: # 1 Text of Proposed Order)(Oettinger, Andrew) |
| 08/11/2020 | 30 | | STIPULATION *AMENDING SCHEDULING ORDER* by All Defendants. (Attachments: # 1 Text of Proposed Order)(Oettinger, Andrew) |
| 08/17/2020 | 31 | | ORDER Granting 30 Stipulation Amending Scheduling Order signed by Judge Lynn Adelman on 8/20/20. (cc: all counsel)(jad) |
| 08/17/2020 | | | TEXT ONLY ORDER Granting 29 Stipulated MOTION for Protective Order signed by Judge Lynn Adelman on 8/17/20. (cc: all counsel)(jad) |
| 08/17/2020 | 32 | | PROTECTIVE ORDER signed by Judge Lynn Adelman on 8/17/20. (cc: all counsel)(jad) |
| 11/24/2020 | 33 | | STIPULATION *to Amend Scheduling Order* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order Proposed Order)(Halloin, Scott) |
| 11/25/2020 | 34 | | ORDER Granting 33 Stipulation to Amend Scheduling Order signed by Judge Lynn Adelman on 11/25/20. (cc: all counsel)(jad) |
| 02/15/2021 | 35 | | STIPULATION *to Amend Scheduling Order* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order Proposed Order)(Halloin, Scott) |
| 02/17/2021 | 36 | | ORDER Granting 35 Stipulation to Amend Scheduling Order signed by Judge Lynn Adelman on 2/17/21. (cc: all counsel)(jad) |
| 03/29/2021 | 37 | | Rule 7(h) Expedited Non–Dispositive MOTION to Quash *Subpoena to SVA Certified Public Accountants* by All Defendants. (Oettinger, Andrew) |
| 03/29/2021 | 38 | | Rule 7(h) Expedited Non–Dispositive MOTION to Quash *Subpoenas to Godfrey & Kahn, S.C. and Charles Vogel* by All Defendants. (Oettinger, Andrew) |
| 03/29/2021 | 39 | | DECLARATION of Andrew S. Oettinger *in Support of Defendants' Motions to Quash Subpoena to SVA Certified Public Accountants, Godfrey & Kahn, S.C. and Charles Vogel* (Attachments: # 1 Exhibit 1 – Notices of Subpoena, # 2 Exhibit 2 – Responses to Discovery Requests, # 3 Exhibit 3 – Notices of Deposition, # 4 Exhibit 4 – Objection Letter, # 5 Exhibit 5 – Second Objection |

| | | | |
|---|---|---|---|
| | | | Letter, # 6 Exhibit 6 – Initial Disclosures)(Oettinger, Andrew) |
| 04/01/2021 | 40 | | STIPULATION *for Briefing Schedule* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order Proposed Order)(Halloin, Scott) |
| 04/05/2021 | 41 | | ORDER Granting 40 Stipulation for Briefing Schedule signed by Judge Lynn Adelman on 4/5/21. (cc: all counsel)(jad) |
| 04/12/2021 | 42 | | MOTION to Compel by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 04/12/2021 | 43 | | BRIEF in Opposition ~~Support~~ filed by All Plaintiffs re 37 Rule 7(h) Expedited Non–Dispositive MOTION to Quash *Subpoena to SVA Certified Public Accountants*, 38 Rule 7(h) Expedited Non–Dispositive MOTION to Quash *Subpoenas to Godfrey & Kahn, S.C. and Charles Vogel*,and BRIEF in Support 42 MOTION to Compel . (Halloin, Scott) Modified on 4/13/2021 (jcl). |
| 04/12/2021 | 44 | | DECLARATION of Scott R. Halloin (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(Halloin, Scott) |
| 04/12/2021 | 45 | | DECLARATION of Ronald Rousse (Halloin, Scott) |
| 04/12/2021 | 46 | | DECLARATION of Stephen C. VanderBloemen (Halloin, Scott) |
| 04/21/2021 | 47 | | STIPULATION *for Amended Scheduling Order* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 04/22/2021 | 48 | | ORDER Granting 47 Stipulation for Amended Scheduling Order signed by Judge Lynn Adelman on 4/22/21. (cc: all counsel)(jad) |
| 04/30/2021 | 49 | | Joint MOTION for Discovery *Conference* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 05/03/2021 | 50 | | ORDER signed by Judge Lynn Adelman on 5/3/21 granting 49 Motion for Discovery. A telephonic conference will be held on May 11, 2021 at 1:30 p.m. The court will initiate the call. Counsel must email the court prior to the call at AdelmanPO@wied.uscourts.gov to provide contact information. (cc: all counsel)(jad) |
| 05/11/2021 | 51 | | Minute Entry for proceedings held before Judge Lynn Adelman: Status Conference held on 5/11/2021. Court and parties discuss matters relating to parties' recent discovery motions. Based on plaintiffs' counsel's oral description of the information he is seeking, counsel for defendants believes that the information does not exist. Defense counsel agrees to inquire whether defendants' outside accounting firm used information provided by plaintiffs in 2015 to create a valuation that was used in defendants' financial statements or tax returns. Defense counsel believes he can provide an answer to plaintiffs within 7 days. After 7 days, the parties will submit a joint statement to the court about whether further proceedings related to this issue are needed. In the same statement, the parties may request an extension of expert deadlines. (Court Reporter Susan Armbruster) (jad) |
| 05/13/2021 | 52 | | TRANSCRIPT of Telephonic Status Conference held on May 11, 2021 before Judge Lynn Adelman Court Reporter/Transcriber Susan Armbruster, Contact |

| | | |
|---|---|---|
| | | at 414–290–2641. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website www.wied.uscourts.gov Redaction Statement due 6/7/2021. Redacted Transcript Deadline set for 6/17/2021. Release of Transcript Restriction set for 8/16/2021. (Armbruster, Susan) |
| 05/18/2021 | 53 | STATEMENT by All Defendants *Joint Statement to the Court Following Discovery Conference*. (Oettinger, Andrew) |
| 05/24/2021 | 54 | STATEMENT by All Defendants *Further Update to the Court Following Discovery Conference*. (Oettinger, Andrew) |
| 09/07/2021 | 55 | ORDER signed by Judge Lynn Adelman on 9/7/21 that the plaintiffs' motion to compel 42 and the defendants motions to quash 37 & 38 are DENIED. Plaintiffs expert disclosures September 28, 2021; Defendants expert disclosures November 29, 2021; Rebuttal expert disclosures, if any, December 29, 2021; All discovery shall be completed no later than January 19, 2022; and Dispositive motions shall be filed no later than February 9, 2022. (cc: all counsel)(jad) |
| 09/13/2021 | 56 | Rule 7(h) Expedited Non–Dispositive MOTION to Compel by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 09/13/2021 | 57 | DECLARATION of Scott R. Halloin *in Support of Plaintiffs Roumann Consulting Inc. and Ronald Rousse's Civil L.R. 7(h) Expedited Non–Dispositive Motion Under ECF DN 19 par 4(c) and Civil L.R. 7(4)* (Attachments: # 1 Exhibit A – August 13, 2021, Letter from Andrew Oettinger)(Halloin, Scott) |
| 09/20/2021 | 58 | BRIEF in Opposition filed by All Defendants re 56 Rule 7(h) Expedited Non–Dispositive MOTION to Compel . (Oettinger, Andrew) |
| 09/20/2021 | 59 | DECLARATION of David Schlidt (Oettinger, Andrew) |
| 09/20/2021 | 60 | DECLARATION of Andrew S. Oettinger *in Support of Defendants' Memorandum in Opposition to Motion to Compel* (Attachments: # 1 Exhibit 1 – 2020–12–04 Symbiont's Objections and Responses to Plfs' Third Request for Production of Documents, # 2 Exhibit 2 – 2021–05–11 Transcript, # 3 Exhibit 3 – 2021–07–16 Symbiont's position and objections letter)(Oettinger, Andrew) |
| 09/22/2021 | 61 | Rule 7(h) Expedited Non–Dispositive MOTION to Supplement *Record on Plaintiffs Roumann Consulting Inc. and Ronald Rousse's Motion to Compel* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 09/22/2021 | 62 | DECLARATION of Stephen C. VanderBloemen (Halloin, Scott) |
| 09/23/2021 | 63 | Joint MOTION Amend Scheduling Order by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 09/23/2021 | 64 | STIPULATION *for Amended Scheduling Order* by All Plaintiffs. (Halloin, Scott) |

| 09/27/2021 | 65 | | ORDER signed by Judge Lynn Adelman on 9/27/21 granting 63 Motion to Modify Scheduling Order. (cc: all counsel)(jad) |
|---|---|---|---|
| 09/29/2021 | 66 | | BRIEF in Opposition filed by All Defendants re 61 Rule 7(h) Expedited Non–Dispositive MOTION to Supplement *Record on Plaintiffs Roumann Consulting Inc. and Ronald Rousse's Motion to Compel* . (Oettinger, Andrew) |
| 10/01/2021 | 67 | | ORDER signed by Judge Lynn Adelman on 10/1/21 that the plaintiffs' motion to supplement 61 is GRANTED and their motion to compel 56 is DENIED. (cc: all counsel)(jad) |
| 12/20/2021 | 68 | | NOTICE of Appearance by Sheila L Shadman Emerson on behalf of All Plaintiffs. Attorney(s) appearing: Sheila Shadman Emerson (Shadman Emerson, Sheila) |
| 12/20/2021 | 69 | | NOTICE of Appearance by Molly Stacy Fitzgerald on behalf of All Plaintiffs. Attorney(s) appearing: Molly Fitzgerald (Fitzgerald, Molly) |
| 12/21/2021 | 70 | | NOTICE of Withdrawal by James J Irvine on behalf of Roumann Consulting Inc, Ronald Rousse.Attorney James J. Irvine to be termed. (Irvine, James) |
| 01/14/2022 | 71 | | STIPULATION *and Agreed Motion to Amend Scheduling Order* by All Defendants. (Attachments: # 1 Text of Proposed Order)(Oettinger, Andrew) |
| 01/18/2022 | 72 | | ORDER Granting 71 Stipulation for Amended Scheduling Order signed by Judge Lynn Adelman on 1/18/22. (cc: all counsel)(jad) |
| 02/01/2022 | 73 | | Witness List by All Plaintiffs. (Halloin, Scott) |
| 02/15/2022 | 74 | | OBJECTIONS by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc *to Plaintiff's Rule 26(a)(3) Pre–Trial Disclosures and Reservation of Rights*. (Carrino, Christie) |
| 03/18/2022 | 75 | | Rule 7(h) Expedited Non–Dispositive MOTION to Exclude *Defendants from Presenting Non–Disclosed Expert Witnesses and Expert Opinions at Trial* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 03/18/2022 | 76 | | DECLARATION of Scott R. Halloin *in Support of Plaintiffs Roumann Consulting Inc.s and Ronald Rousses Civil L. R. 7(h) Non–Dispositive Motion to Preclude Defendants from Presenting Non–Disclosed Expert Witnesses and Expert Opinions at Trial* (Attachments: # 1 Exhibit 1 – Defendants' Expert Witness Disclosure)(Halloin, Scott) |
| 03/18/2022 | 77 | | UNPUBLISHED Decision *Prograf Antitrust Litig., No. 1:11–md–02242–RWZ, 2014 WL 4745954 (D. Mass. June 10, 2014)* filed by All Plaintiffs (Halloin, Scott) |
| 03/18/2022 | 78 | | UNPUBLISHED Decision *Tajornera v. Black Elk Energy Offshore Operations, L.L.C., No. 13–0366, 2016 WL 3180776 (E.D. La. June 7, 2016)* filed by All Plaintiffs (Halloin, Scott) |
| 03/18/2022 | 79 | | MOTION for Summary Judgment *(Partial)* by Roumann Consulting Inc. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 03/18/2022 | 80 | | BRIEF in Support filed by Roumann Consulting Inc re 79 MOTION for Summary Judgment *(Partial)* . (Halloin, Scott) |

| 03/18/2022 | 81 | | Proposed Findings of Fact by Roumann Consulting Inc (Halloin, Scott) |
|---|---|---|---|
| 03/18/2022 | 82 | | DECLARATION of Ronald Rousse *in Support of Motion for Summary Judgment (Partial)* (Attachments: # 1 Exhibit 1 – Employment Agreement, # 2 Exhibit 2 – Independent Contractor Agreement, # 3 Exhibit 3 – Termination Letter, # 4 Exhibit 4 – Deposition Exhibit 100, # 5 Exhibit 5 – Deposition Exhibit 101, # 6 Exhibit 6 – Deposition Exhibit 102, # 7 Exhibit 7 – Deposition Exhibit 97f, # 8 Exhibit 8 – Deposition Exhibit 310)(Halloin, Scott) |
| 03/18/2022 | 83 | | DECLARATION of Keith Winningham *in Support of Motion for Summary Judgment (Partial)* (Attachments: # 1 Exhibit 1 – Deposition Exhibit 310)(Halloin, Scott) |
| 03/18/2022 | 84 | | DECLARATION of Brian Binkowski *in Support of Motion for Summary Judgment (Partial)* (Attachments: # 1 Exhibit 1 – Deposition Exhibit 310)(Halloin, Scott) |
| 03/18/2022 | 85 | | DECLARATION of Scott R. Halloin *in Support of Motion for Summary Judgment (Partial)* (Attachments: # 1 Exhibit 1 – TV John Corporate Representative Deposition (12–13–18), # 2 Exhibit 2 – Decision and Order (17–CV–1407, DN 86), # 3 Exhibit 3 – Declaration of David Schlidt (17–CV–1407, DN 102), # 4 Exhibit 4 – Discovery Responses, # 5 Exhibit 5 – TV John and Symbiont Corporate Representative Deposition (03–31–21), # 6 Exhibit 6 – Deposition Exhibit 310, # 7 Exhibit 7 – Timothy Nelson Deposition (04–07–21), # 8 Exhibit 8 – Dean Handrow Deposition (04–14–21), # 9 Exhibit 9 – Chad Johnson Deposition (04–16–21), # 10 Exhibit 10 – Summary Exhibit, # 11 Exhibit 11 – Ronald Rousse Deposition (02–09–22), # 12 Exhibit 12 – Proposed Findings of Fact (17–CV–1407, DN 91), # 13 Exhibit 13 – Memorandum in Support of Motion for Summary Judgment (17–CV–1407, DN 80), # 14 Exhibit 14 – Decision and Order (17–CV–1407, DN 105), # 15 Exhibit 15 – Statement of Additional Facts (17–CV–1407, DN 98), # 16 Exhibit 16 – Response to Motion for Summary Judgment (17–CV–1407, DN 90), # 17 Exhibit 17 – Reply Memorandum in Support of Motion for Summary Judgment (17–CV–1407, DN 97), # 18 Exhibit 18 – Declaration of Ronald Rousse (18–CV–1551, DN 12), # 19 Exhibit 19 – Response to Motion to Dismiss (18–CV–1551, DN 10), # 20 Exhibit 20 – Deposition Exhibit 97f)(Halloin, Scott) |
| 03/18/2022 | 86 | | MOTION to Restrict Document *Attached as Exhibit 6 to the Declaration of Andrew S. Oettinger* by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc. (Oettinger, Andrew) |
| 03/18/2022 | 87 | | MOTION for Summary Judgment by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc. (Oettinger, Andrew) |
| 03/18/2022 | 88 | | BRIEF in Support filed by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc re 87 MOTION for Summary Judgment . (Oettinger, Andrew) |
| 03/18/2022 | 89 | | Proposed Findings of Fact by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc (Oettinger, Andrew) |

| 03/18/2022 | 90 | | DECLARATION of Andrew S. Oettinger *in Support of Defendants' Motion for Summary Judgment* (Attachments: # 1 Exhibit 1 – Pages from 2019 Rousse Deposition, # 2 Exhibit 2 – February 2019 Rousse Declaration, # 3 Exhibit 3 – July 2019 Declaration of Timothy Nelson, # 4 Exhibit 4 – Order on Summary Judgment (2017 Case), # 5 Exhibit 5 – 2022 Rousse Deposition, # 6 Exhibit 6 – RESTRICTED Exhibits to Rousse Deposition filed as Restricted, # 7 Exhibit 7 – October 5 2017 Financial Demand from Roumann, # 8 Exhibit 8 – May 2019 Rousse Declaration, # 9 Exhibit 9 – Pages from 2018 Manning Deposition and Exhibits, # 10 Exhibit 10 – Pages from 2019 Schlidt Deposition and Exhibits, # 11 Exhibit 11 – Roumann's Damages Reports (2017 Case), # 12 Exhibit 12 – Order Denying Motion to Amend (2017 Case), # 13 Exhibit 13 – August 22, 2019 Correspondence Requesting Itemization of Confidential Information, # 14 Exhibit 14 – August 26, 2019 Response regarding Confidential Information, # 15 Exhibit 15 – Roumann's Responses to Symbiont's Discovery Requests, # 16 Exhibit 16 – February 2021 Correspondence regarding 30(b)(6) Notice, # 17 Exhibit 17 – Amended Notice of Deposition to Symbiont Construction, # 18 Exhibit 18 – 2021 Symbiont Construction Deposition, # 19 Exhibit 19 – Correspondence with Supplemental Symbiont Testimony, # 20 Exhibit 20 – Order Regarding Motion to Seal (2017 Case), # 21 Exhibit 21 – Pages from D&R Earthmoving's Website, # 22 Exhibit 22 – 2022 VanderBloemen Deposition)This document and/or certain attachments are restricted to case participants and attorneys of record should use their efiling login and password to view this document(Oettinger, Andrew) |
| 03/24/2022 | 91 | | BRIEF in Opposition filed by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc re 75 Rule 7(h) Expedited Non–Dispositive MOTION to Exclude *Defendants from Presenting Non–Disclosed Expert Witnesses and Expert Opinions at Trial* . (Oettinger, Andrew) |
| 04/07/2022 | 92 | | Joint MOTION for Extension of Time *to Amend Briefing Schedule* by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Halloin, Scott) |
| 04/08/2022 | 93 | | ORDER signed by Judge Lynn Adelman GRANTING 92 Motion for Extension of Time. Responses to each party's summary judgment motion shall be filed on **April 22, 2022**, with replies being due on **May 20, 2022**. (cc: all counsel)(blr) |
| 04/08/2022 | 94 | | RESPONSE to Motion filed by All Plaintiffs re 86 MOTION to Restrict Document *Attached as Exhibit 6 to the Declaration of Andrew S. Oettinger* . (Halloin, Scott) |
| 04/08/2022 | 95 | | AFFIDAVIT of Scott R. Halloin *In Support of Plaintiffs Response To Defendants Motion to File as Restricted Exhibits 5, 7, and 8 to the Deposition Testimony of Ronald Rousse, Attached as Exhibit 6 to the Declaration of Andrew S. Oettinger*. (Attachments: # 1 Exhibit 1 – 02–09–2022 746 AM Email from Oettinger, # 2 Exhibit 2 – 03–16–22 1537 PM Email from Oettinger (1), # 3 Exhibit 3 – 03–17–22 1449 PM Email from Oettinger (1))(Halloin, Scott) |
| 04/21/2022 | 96 | | RESPONSE to Motion filed by Roumann Consulting Inc re 87 MOTION for Summary Judgment *of Symbiont Construction, Inc., Symbiont Holding Company, Inc., and Symbiont Science, Engineering and Construction, Inc.* |

| | | | |
|---|---|---|---|
| | | | (Halloin, Scott) |
| 04/21/2022 | 97 | | RESPONSE filed by Roumann Consulting Inc re 89 Proposed Findings of Fact, 96 Response to Motion *with Statement of Additional Facts* (Halloin, Scott) |
| 04/21/2022 | 98 | | DECLARATION of Scott R. Halloin *in Support of Plaintiffs Response to the Motion for Summary Judgment of Symbiont Construction, Inc., Symbiont Holding Company, Inc., and Symbiont Science, Engineering and Construction, Inc.* (Attachments: # 1 Exhibit 1 – August 22 –2017 Chillman to TVJ Letter (17cv1407 Case, Exhibit 60 Schlidt, David (03–06–19), # 2 Exhibit 2 – August 30, 2017 TVJ letter to Chillman (17cv1407 Case, Exhibit 61 Schlidt, David (03–06–19), # 3 Exhibit 3 – Exhibit 97a T.V. John & Son, Inc. (Nelson, Tim) (12–13–18), # 4 Exhibit 4 – Exhibit 97f T.V. John & Son, Inc. (Nelson, Tim) (12–13–18), # 5 Exhibit 5 – Exhibit 316 from Dep. of Nelson, Tim (04–07–21), # 6 Exhibit 6 – Exhibit 320 from Dep. of Nelson, Tim (04–07–21), # 7 Exhibit 7 – Cited pages from Stinger Deposition, # 8 Exhibit 8 – 10–15–21 VanderBloemen Report, # 9 Exhibit 9 – 01–14–22 VanderBloemen Report)(Halloin, Scott) |
| 04/22/2022 | 99 | | BRIEF in Opposition filed by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc re 79 MOTION for Summary Judgment *(Partial)* . (Oettinger, Andrew) |
| 04/22/2022 | 100 | | RESPONSE filed by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc re 81 Proposed Findings of Fact *and Symbiont Defendants' Statement of Additional Facts* (Oettinger, Andrew) |
| 04/22/2022 | 101 | | DECLARATION of John Nelson (Oettinger, Andrew) |
| 04/22/2022 | 102 | | DECLARATION of Adam Cares (Attachments: # 1 Exhibit 1 – Listing of unique Excel files, # 2 Exhibit 2 – Sample of documents produced on the USB drive productions (images), # 3 Exhibit 3 – Sample of documents produced on the USB drive productions (file listing))(Oettinger, Andrew) |
| 04/22/2022 | 103 | | DECLARATION of Andrew S. Oettinger *in Support of Opposition to Plaintiff's Motion for Partial Summary Judgment* (Attachments: # 1 Exhibit 1 – Copies of pages from the January 2019 deposition of Ronald Rousse, # 2 Exhibit 2 – Copies of pages from the September 2018 deposition of Timothy Nelson, # 3 Exhibit 3 – Courts July 20, 2020 Order (2017 Case), # 4 Exhibit 4 – Copy of TV Johns Expert Witness Disclosures (2017 Case), # 5 Exhibit 5 – Copy of November 20, 2019 Declaration of David Schlidt, # 6 Exhibit 6 – Plaintiffs Exhibit 97–A, # 7 Exhibit 7 – October 22, 2020 Correspondence, # 8 Exhibit 8 – Copy of March 18, 2019 Declaration of Timothy Nelson, # 9 Exhibit 9 – Copy of September 20, 2019 Declaration of Ronald Rousse, # 10 Exhibit 10 – October 10, 2019 Correspondence, # 11 Exhibit 11 – Complaint (2017 Case), # 12 Exhibit 12 – First Amended Complaint (2017 Case), # 13 Exhibit 13 – Proposed Second Amended Complaint (2017 Case), # 14 Exhibit 14 – Transcript from May 11, 2021 Status Conference)(Oettinger, Andrew) |
| 05/17/2022 | 104 | | Unopposed MOTION to Modify *Briefing Schedule* by All Defendants. (Attachments: # 1 Text of Proposed Order)(Oettinger, Andrew) |
| 05/18/2022 | 105 | | |

| | | |
|---|---|---|
| | | ORDER signed by Judge Lynn Adelman on 5/18/22 GRANTING <u>104</u> Motion to Modify Briefing Schedule. (cc: all counsel)(kmr) |
| 05/27/2022 | <u>106</u> | REPLY BRIEF in Support filed by Roumann Consulting Inc re <u>79</u> MOTION for Summary Judgment *(Partial)* . (Halloin, Scott) |
| 05/27/2022 | <u>107</u> | RESPONSE filed by Roumann Consulting Inc re <u>100</u> Response (Non−Motion) *Defendants' Statement of Additional Facts* (Halloin, Scott) |
| 05/27/2022 | <u>108</u> | DECLARATION of Scott R. Halloin *in Support of Plaintiff's Reply Brief in Support of Its Motion for Partial Summary Judgment* (Attachments: # <u>1</u> Exhibit 1 − Defendants' Rule 26(a)(1) Initial Disclosures)(Halloin, Scott) |
| 05/27/2022 | <u>109</u> | DECLARATION of Ronald Rousse *(Supplemental) in Support of Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment* (Attachments: # <u>1</u> Exhibit 1 − Redacted Samples of Input Sheet, # <u>2</u> Exhibit 1 − Restricted Samples of Input Sheet, # <u>3</u> Exhibit 2 − Exhibit 316 Nelson, Tim (04−07−21), # <u>4</u> Exhibit 3 − Exhibit 320 Nelson, Tim (04−07−21), # <u>5</u> Exhibit 4 − Redacted Steps for Finding Contractors, # <u>6</u> Exhibit 4 − Restricted Steps for Finding Contractors, # <u>7</u> Exhibit 5 − Redacted Project Task List, # <u>8</u> Exhibit 5 − Restricted Project Task List, # <u>9</u> Exhibit 6 − Redacted Subcontractor Qualification Form, # <u>10</u> Exhibit 6 − Restricted Subcontractor Qualification Form, # <u>11</u> Exhibit 7 − Redacted Samples from Caulking, # <u>12</u> Exhibit 7 − Restricted Samples from Caulking, # <u>13</u> Exhibit 8 − Redacted Kroger Muncie Documents, # <u>14</u> Exhibit 8 − Restricted Kroger Muncie Documents, # <u>15</u> Exhibit 9 − Redacted KRO MUN J338 − Bid Scope List 171119, # <u>16</u> Exhibit 9 − Restricted KRO MUN J338 − Bid Scope List 171119, # <u>17</u> Exhibit 10 − Redacted Documents Cited in Para. 44 of Prior Declaration, # <u>18</u> Exhibit 10 − Restricted Documents Cited in Para. 44 of Prior Declaration)<span style="color:red">This document and/or certain attachments are restricted to case participants and attorneys of record should use their efiling login and password to view this document</span>(Halloin, Scott) |
| 05/27/2022 | <u>110</u> | MOTION to Restrict Document *Exhibits 1 and 4 through 10 to the May 27, 2022 Supplemental Declaration of Ronald Rousse* by Roumann Consulting Inc. (Attachments: # <u>1</u> Text of Proposed Order Text of Proposed Order)(Halloin, Scott) |
| 05/27/2022 | <u>111</u> | REPLY BRIEF in Support filed by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc re <u>87</u> MOTION for Summary Judgment . (Oettinger, Andrew) |
| 05/27/2022 | <u>112</u> | REPLY filed by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc re <u>97</u> Response (Non−Motion) *to Roumann's Statement of Additional Facts*. (Oettinger, Andrew) |
| 05/27/2022 | <u>113</u> | DECLARATION of Andrew S. Oettinger *in Support of Defendants' Reply in Support of Their Motion for Summary Judgment* (Attachments: # <u>1</u> Ex. 1 − Roumann's First Set of Requests for Production, # <u>2</u> Ex. 2 − Feb. 14, 2020 Court Minutes, # <u>3</u> Ex. 3 − Feb. 17, 2020 Oettinger Letter, # <u>4</u> Ex. 4 − April 14, 2020 Halloin Letter to Judge Adelman, # <u>5</u> Ex. 5 − June 3, 2020 Email exchange re discovery timetable, # <u>6</u> Ex. 6 − July 8, 2020 Oettinger letter enclosing discovery responses, # <u>7</u> Ex. 7 − July 9, 2020 Court Minutes, # <u>8</u> Ex. 8 − Aug. 8, 2020 Oettinger letter enclosing sample production and |

| | | | |
|---|---|---|---|
| | | | methodology, # <u>9</u> Ex. 9 – Oct. 22, 2020 Oettinger letter enclosing encrypted USB, # <u>10</u> Ex. 10 – Oct. 30, 2020 Halloin email re problems with USB, # <u>11</u> Ex. 11 – Nov. 18, 2020 Oettinger letter enclosing encrypted USB)(Oettinger, Andrew) |
| 06/17/2022 | <u>114</u> | | RESPONSE to Motion filed by Symbiont Construction Inc, Symbiont Holding Company Inc, Symbiont Science Engineering and Construction Inc re <u>110</u> MOTION to Restrict Document *Exhibits 1 and 4 through 10 to the May 27, 2022 Supplemental Declaration of Ronald Rousse* . (Oettinger, Andrew) |
| 06/17/2022 | <u>115</u> | | DECLARATION of Adam Cares *in Support of Response in Opposition to Plaintiff's Motion to Seal* (Attachments: # <u>1</u> Exhibit A – List of File Names)(Oettinger, Andrew) |
| 07/01/2022 | <u>116</u> | | REPLY BRIEF in Support filed by Roumann Consulting Inc re <u>110</u> MOTION to Restrict Document *Exhibits 1 and 4 through 10 to the May 27, 2022 Supplemental Declaration of Ronald Rousse* . (Halloin, Scott) |
| 07/01/2022 | <u>117</u> | | DECLARATION of Scott R. Halloin *in Support of Plaintiff Roumann Consulting Inc.'s Reply in Support of Its Motion to File Under Seal Exhibits 1 and 4 through 10 to the May 27, 2022 Supplemental Declaration of Ronald Rousse* (Halloin, Scott) |
| 09/30/2022 | <u>118</u> | 19 | ORDER signed by Judge Lynn Adelman on 9/30/22. IT IS ORDERED that the plaintiffs' motion for partial summary judgment (ECF No. <u>79</u> ) is DENIED. IT IS FURTHER ORDERED that the defendants' motion for summary judgment (ECF No. <u>87</u> ) is GRANTED. IT IS FURTHER ORDERED that the plaintiffs' motion to prevent the defendants from presenting undisclosed expert witnesses at trial (ECF No. <u>75</u> ) is DENIED as MOOT. IT IS FURTHER ORDERED that the defendants' motion to restrict (ECF No. <u>86</u> ) the documents attached as Exhibit 6 to the Declaration of Andrew S. Oettinger (ECF No. 90–6) is DENIED because the plaintiffs have withdrawn their Confidential designation from these documents. IT IS FURTHER ORDERED that the plaintiffs' motion to file under seal (ECF No. <u>110</u> ) Exhibits 1 and 410 to the May 27, 2022 supplemental declaration of Ronald Rousse (ECF No. <u>109</u> ) is GRANTED IN PART and DENIED IN PART. The motion is granted as to Exhibit 10 (ECF No. 109–18) and denied as to all other exhibits. FINALLY, IT IS ORDERED that the Clerk of Court shall enter final judgment. (cc: all counsel)(kmr) |
| 09/30/2022 | <u>119</u> | 18 | JUDGMENT signed by Deputy Clerk on 9/30/22. (cc: all counsel)(kmr) |
| 10/14/2022 | <u>120</u> | | BILL OF COSTS Proposed by Symbiont Construction Inc (Attachments: # <u>1</u> Bill of Costs Itemization, # <u>2</u> Exhibit 1 – service fees, # <u>3</u> Exhibit 2 – transcript fees, # <u>4</u> Exhibit 3 – witness fees, # <u>5</u> Exhibit 4 – other fees)(Carrino, Christie) |
| 10/17/2022 | <u>121</u> | | BRIEFING LETTER Electronically Transmitted to Parties re <u>120</u> Bill of Costs,. Objections due October 31, 2022, Response due November 14, 2022, and Reply due November 21, 2022. (cc: all counsel) (bx) |
| 10/17/2022 | <u>122</u> | | LETTER from Scott R. Halloin *Regarding Briefing Schedule for Bill of Costs*. (Halloin, Scott) |
| 10/18/2022 | 123 | | |

| | | | |
|---|---|---|---|
| | | | TEXT ONLY ORDER signed by Judge Lynn Adelman on 10/18/22 GRANTING 122 Letter. Motion to Object to Bill of Costs due 11/4/22. Response due 11/17/22. Reply due 11/29/22. (cc: all counsel)(kmr) |
| 10/21/2022 | 124 | 16 | NOTICE OF APPEAL by All Plaintiffs. Filing Fee PAID $505, receipt number AWIEDC–4239527 (cc: all counsel) (Halloin, Scott) |
| 10/21/2022 | 125 | | Attorney Cover Letter re: 124 Notice of Appeal (Attachments: # 1 Docket Sheet)(dl) |

ROUMANN CONSULTING INC. and
RONALD ROUSSE,

       *Plaintiff-Appellant*,

       v.

SYMBIONT CONSTRUCTION, INC.,
SYMBIONT HOLDING COMPANY, INC.,
SYMBIONT SCIENCE, ENGINEERING AND CONSTRUCTION, INC.,
THOMAS C. BACHMAN,
SONYA K. SIMON, ESQ.,
EDWARD T. MANNING, JR. and
TIMOTHY P. NELSON,

       *Defendants-Appellees*.

Case No. 18-CV-1551

Hon. Lynn Adelman,
Judge Presiding

---

## NOTICE OF APPEAL

Notice is hereby given that Roumann Consulting Inc. ("Roumann") and Ronald Rousse ("Rousse"), plaintiffs in the above-captioned proceeding, hereby appeal to the United States Court of Appeals for the Seventh Circuit the Judgment Order entered on September 30, 2022 (DN 119), in favor of the Defendants and against Roumann and Rousse.

On appeal, Roumann and Rousse will request that the Court of Appeals reverse the Judgment Order (DN 119), or, in the alternative, vacate the Judgment Order and remand the case to the district court for further proceedings, and that

the Court of Appeals grant such other and further relief to Roumann and Rousse as is just and proper.

Dated October 21, 2022.

HALLOIN LAW GROUP, S.C.
Attorneys for Plaintiffs Roumann Consulting Inc. and Ronald Rousse


s/ Scott R. Halloin
Scott R. Halloin


Scott R. Halloin
Wis. State Bar No. 1024669
shalloin@halloinlawgroup.com
*Attorney for Plaintiffs-Appellants Roumann Consulting, Inc. and Ronald Rousse*
HALLOIN LAW GROUP, S.C.
839 North Jefferson Street
Suite 503
Milwaukee, Wisconsin 53202
p 414-732-2424
f  414-732-2422

2

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

**JUDGMENT IN A CIVIL CASE**

ROUMANN CONSULTING INC. and
RONALD ROUSSE,
         Plaintiff

      v.                                 CASE NUMBER: 18-C-1551

SYMBIONT CONSTRUCTION, INC.
SYMBIONT HOLDING COMPANY, INC.
SYMBIONT SCIENCE, ENGINEERING & CONSTRUCTION, INC.
THOMAS C. BACHMAN,
SONYA K. SIMON, ESQ.,
EDWARD T. MANNING, and
TIMOTHY P. NELSON,
          Defendants

☐   **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

X   **Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

     IT IS ORDERED AND ADJUDGED that the plaintiffs shall take nothing by their complaint and judgment is entered in favor of the defendants on the merits.

| | |
|---|---|
|     September 30, 2022     | Gina M. Colletti      |
| Date | Clerk |
| | |
| | s/ K. Rafalski        |
| | (By) Deputy Clerk |

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ROUMANN CONSULTING INC, and
RONALD ROUSSE,
       Plaintiffs,

v.
                             Case No. 18-C-1551

SYMBIONT CONSTRUCTION, INC.,
et al.,
       Defendants.

_____

## <u>DECISION AND ORDER</u>

The present lawsuit is part of a broader dispute between the parties that arose

when defendant Symbiont Construction, Inc., terminated an independent contractor

agreement with plaintiff Roumann Consulting Inc., which is owned by the other plaintiff,

Ronald Rousse. The dispute originally arrived in this court as Case No. 17-C-1407, which

is also assigned to me. That case primarily involves Roumann and Rousse's claim that

Symbiont (which is sued under the name of its predecessor in interest, T.V. John & Son,

Inc.) failed to pay certain commissions owed to Roumann. The present case primarily

involves Roumann and Rousse's claim that, following the termination of the independent

contractor agreement, Symbiont continued to use Roumann's confidential information in

violation of the terms of that agreement. Before me now are the parties' cross motions for

summary judgment on the plaintiffs' claims involving this alleged misuse of confidential

information. Also before me are two motions to restrict public access to certain documents

in the record and plaintiffs' motion to prevent the defendants from presenting undisclosed

expert witnesses at trial.

# I. BACKGROUND

## A.    The Parties and Their General Relationship Prior to Termination

Since approximately 1995, plaintiff Ronald Rousse has worked in the construction industry as an estimator and construction manager. (Decl. of Ronald Rousse, March 18, 2022, ¶ 9.) Through his work, he developed expertise in bidding on and managing construction projects for "big box" retailers, such as large grocery and home-improvement chains, that build branded structures. A branded structure is a retail store that is intended to look exactly the same as, or at least very similar to, the retailer's stores in other locations, and to be recognizable as the company's store. These are generally large, multimillion-dollar projects for national retailers. Most aspects of the building are repetitively built and very similar. (*Id.* ¶ 10.)

In December 2011, defendant Symbiont Construction, Inc. ("Symbiont"), a construction general contractor, hired Rousse as an employee. (Pls. Resp. to Defs. Prop. Findings of Fact ("PFOF") ¶ 1, ECF No. 97.) At that time—and for much of the time period relevant to this case—Symbiont was known as T.V. John & Son, Inc. ("T.V. John"). (*Id.*) On March 1, 2015, an entity known as Symbiont Holding Company, Inc., acquired T.V. John by purchasing its stock. (Defs. Resp. to Pls. Add'l PFOF ¶ 4, ECF No. 112.) After the acquisition, T.V. John continued to do business under that name for a short time. However, on June 8, 2018, T.V. John's name was changed to Symbiont Construction, Inc. (Id. ¶ 9.) Thus, "T.V. John" and "Symbiont" are simply different names for the same legal entity. Nothing of significance turns on that entity's name at any given time. In this opinion, I will refer to this entity exclusively as "Symbiont" even though its name was T.V.

2

John for much of the relevant time period. I do this because Symbiont is the named defendant and to avoid implying that Symbiont and T.V. John are legally distinct entities.[1]

When Symbiont hired Rousse in late 2011, his job was to bid on and estimate projects for big-box retailers and grocers, such as Menards, Kroger, and The Fresh Market. (Pls. Resp. to Defs. PFOF ¶ 1, ECF No. 97.) On February 16, 2012, Rousse signed a letter that outlined the terms of his employment for Symbiont. (ECF No. 82-1.) The letter stated that Rousse's position was Vice President of Estimating, Project Controls, and Major Projects. It stated that Rousse would be paid a base salary, was eligible to participate in Symbiont's employee benefit plans, and was eligible to earn commissions on business that he generated for Symbiont. The letter also stated that Rousse's first day of employment was December 12, 2011.

Rousse's employment position with Symbiont lasted until sometime in 2015. (The exact date is disputed but not relevant to any issue raised by the motions under consideration.) In late 2014 or early 2015, Rousse organized the entity Roumann Consulting Inc. ("Roumann") and became its owner and president. (Pls. Resp to Defs. PFOF ¶ 11.) As far as the record reveals, Rousse was Roumann's only employee between 2015 and 2017. On March 26, 2015, Roumann and Symbiont entered into a contract entitled "Independent Contactor Agreement." (ECF No. 82-2, hereinafter "Agreement.") Under the Agreement, Roumann was to continue performing the bidding, estimating, and project-management services that Rousse had performed as an

---

[1] Two other Symbiont entities are parties: Symbiont Holding Company, Inc., and Symbiont Science, Engineering & Construction, Inc. I will refer to these parties as "Symbiont Holding" and "Symbiont Science."

employee of Symbiont. (*See id.* art. I.) The Agreement provided that Symbiont would pay Roumann an hourly fee for Rousse's labor, plus a commission for projects solicited by Roumann and accepted by Symbiont. (Defs. Resp. to Pls. PFOF ¶ 43, ECF No. 100.)

The Agreement contains a section entitled "Confidential Information." (Agreement, art. VIII.) This section provides that, during the course of the parties' relationship, they may disclose confidential information to each other. (*Id.* § 8.1.) The Agreement provides that such information will be disclosed "solely for the purpose of permitting the Receiving Party to utilize it in connection with the performance of its obligations [under the Agreement]." (*Id.*) It further provides that each party "agrees not to, directly or indirectly, use or disclose the [other's] Confidential Information, except to the extent necessary to perform its obligations [under the Agreement]." (*Id.* § 8.1(a).) Finally, the Agreement defines "Confidential Information" as follows:

> The term "Confidential Information" shall mean the Disclosing Party's information that is proprietary or confidential in nature or confidential or proprietary information that is licensed to the Disclosing Party and includes, but is not limited to, the Disclosing Party's manner and method of conducting business, customer proposals, concepts, ideas, plans, methods, market information, technical information and the Disclosing Party's client, prospective client and contact lists.

(*Id.*)

## B.    Rousse and Roumann's Work for Symbiont

Throughout his relationship with Symbiont, Rousse worked remotely from his office near Windsor, Canada. His primary responsibility was to create bidding packages on behalf of Symbiont. This generally worked as follows. When a retailer such as Kroger or Menards solicited bids for construction of a new facility, Rousse would review the specifications for the project and identify the work that the project would entail (steel

4

installation, pouring concrete, plumbing, electrical, and so on). (Rousse 2022 Dep. at 118:14–118:18.) He would then send out invitations to appropriate subcontractors and invite them to submit their own bids to him. (*Id.*) Rousse would take those bids, develop an estimate of what it would cost Symbiont to complete the project, and prepare a bid that Symbiont would submit to the retailer to become the general contractor for the project. (*Id.*) If the bid was successful and Symbiont was awarded the contract, Symbiont would enter into a general contract with the retailer and a series of subcontracts with the subcontractors that were selected to perform the work. (Pls. Resp. to Defs. Add'l PFOF ¶ 161, ECF No. 107.) After the contracts were awarded, Rousse would help manage the construction of the branded store. (Rousse Decl., March 18, 2022, ¶ 16.)

## C.    Plaintiffs' Development of Alleged Confidential Information

Throughout his career, Rousse learned various pieces of information about the subcontractors that were available to perform work on the types of branded structures that Symbiont wanted to build. As Rousse interacted with subcontractors on specific construction projects, he created a "database of relevant past project information" that included information such as the following:

> (a) the subcontractors that had previously constructed segments of prior projects and the names of their foreman, (b) prior subcontractor bidding and pricing practices, (c) prior subcontractor history/experience with specific segments (and tendency to submit change orders), (d) prior subcontractor quality, (e) prior subcontractor field offices (in order to determine distance to sites); and (f) locations to calculate distance from the site (which greatly impacts cost).

(Rousse Decl., March 18, 2022, ¶ 12.) When a retailer opened a new project for bidding, Rousse used this database of past project information to determine what subcontractors and vendors were nearby the anticipated new project, to determine what segments of that

Case 2:18-cv-01551-LA   Document 116/21/22   Filed 10/21/22   Page 5 of 26

project they had worked on at previous jobs, to make projections with respect to price, and to limit anticipated change orders. (*Id.* ¶ 14.)

Rousse began developing his database of information before he was hired by Symbiont in December 2011. (*Id.* ¶ 12.) As a Symbiont employee, Rousse collected additional data points about subcontractors as he prepared Symbiont's bids and managed Symbiont's contracts with retailers and subcontractors. (Defs. Resp. to Pls. PFOF ¶ 10.) Rousse used his database of information to create Symbiont's bidding packages. (*Id.* ¶ 14). When Rousse's employment with Symbiont ended and Roumann's independent contractor relationship with Symbiont began, Rousse continued the process of collecting information from Symbiont's bids and projects and adding them to his database. (Rousse Decl., March 18, 2022, ¶ 24.)

Rousse contends that he created his database of information "on [his] own time." (*Id.* ¶ 17.) By this, he seems to mean that he did not consider compiling the database to have been one of his job duties. (*Id.* ¶ 18.) However, Rousse does not contend that he obtained the information that he tracked after December 2011 outside the scope of his employment or agency for Symbiont. Rousse does not, for example, claim that he obtained this information by cold-calling subcontractors on nights and weekends, when he was not performing work for Symbiont. Rather, Rousse himself explains that he learned the information from "past project[s]" (*id.* ¶ 12), which, after December 2011, necessarily meant Symbiont's projects, as Rousse does not claim to have worked for other general contractors during his time as an employee of Symbiont or as its independent contractor.

6

In the present suit, Rousse and Roumann contend that Rousse's database of information about subcontractors qualifies as "Confidential Information" within the meaning of the Independent Contractor Agreement. Rousse and Roumann also contend that Rousse's "client contacts"—defined as all employees of the retailers that Rousse brought to Symbiont—qualify as Confidential Information. (Rousse 2022 Dep. at 28:3–28:11.) Finally, Rousse claims that his Confidential Information includes all documentation about the projects that he secured for Symbiont that Symbiont compiled during the life of each project. (*Id.* at 43:14–43:19.)

## D.  Use of Procore Software

In approximately 2015, after Symbiont entered into the Independent Contractor Agreement with Roumann, Symbiont decided to begin using a software program known as Procore. (Pls. Resp. to Defs. PFOF ¶ 27.) Symbiont used Procore to automate the administrative aspects of bidding and project management, such as communicating with subcontractors, and to house project documents such as plans and contracts. (*Id.*) Over time, Symbiont tracked nearly every piece of information about its projects on Procore. (Rousse 2022 Dep. at 150:16–150:17 ("Basically it tracks 100 percent of the entire project . . . .".) On a "per project basis over two years" (*id.* at 44:6–44:7), Symbiont uploaded to Procore information about the subcontractors that bid on its projects and other information about the projects that Symbiont was awarded, including change orders and client contact lists (*id.* at 42:5–42:11). Rousse explains: "[O]ver time, [Symbiont] was documenting. . . . as projects went on, they were documenting all my life's worth of work on Procore. So we'd bid a project, document it; get a project, document it; contact lists, as we're doing projects, gets documented." (*Id.* at 43:7–43:19.)

7

According to Rousse, Symbiont uploaded to Procore certain Excel files that Rousse had created, and that contained contact information for subcontractors organized by trade and region. (*Id.* at 140:7–141:3.) Rousse contends that, as Symbiont bid on and completed projects, it "expanded the list" by adding to Procore information that Symbiont learned through its business relationships, such as drawings for projects, updated client lists, bid history (such as which subtractors had bid on Symbiont's prior projects and which had not), the location of each subcontractor, the subcontractor's proximity to a project, and the costs associated with prior bids. (Rousse 2022 Dep. at 103:12–103:17, 103:25–104:7, 104:15–104:16, 104:25–105:7.) Ultimately, Rousse describes Procore as a "massive" and "historic database of jobs [Symbiont] performed" that encompassed cost and pricing information associated with previous projects. (*Id.* at 116:6–116:17, 138:13–138:15.) Symbiont used the information stored in Procore to bid on future projects. As Rousse describes it, when Symbiont put a job out to bid, it would go into Procore, select the subcontractors that it wanted to invite to bid on the project from Procore's database, and then use Procore to send invites to the subcontractors. (*Id.* 139:8–139:11.)

Rousse maintains that, because Procore was ultimately built on information that he had collected, nearly the entire Procore database qualifies as his Confidential Information. (Rousse Decl., March 18, 2022, ¶ 42.)

**E. Termination of the Independent Contractor Agreement and Commencement of Litigation**

In August 2017, Symbiont decided to terminate its relationship with Roumann and Rousse. On August 21, 2017, Symbiont provided Roumann with 30 days' written notice of its intent to terminate the Independent Contractor Agreement. In the following weeks, Symbiont and Roumann exchanged correspondence about the parties' respective rights

8

and obligations following the termination. The discussion centered around Symbiont's obligation to pay Roumann commissions on certain projects during the two-year period following the termination, as required by the terms of the Independent Contractor Agreement.[2]

During the year that followed the termination of the Independent Contractor Agreement, neither Roumann nor Rousse informed Symbiont that it viewed the information in the Procore database as their Confidential Information. As far as the record reveals, during this time, the plaintiffs did not demand that Symbiont delete any information from Procore or stop using Procore altogether. However, on October 3, 2018, plaintiffs' counsel sent a cease-and-desist letter to Symbiont in which it demanded that Symbiont stop using Rousse and Roumann's confidential information. (Rousse Decl., March 18, 2022, ¶ 47 & ECF No. 12-1.) Besides referencing the definition of Confidential Information in the Agreement, the letter does not identify the specific information at issue. The letter does not reference Procore or any other database or compilation of information. (*See* ECF No. 12-1.)

Also in October 2018, Roumann and Rousse commenced the present action. The complaint originally included many claims that have since been dismissed. *See Roumann Consulting Inc. v. Symbiont Construction, Inc.*, No. 18-C-1551, 2019 WL 3501527 (E.D. Wis. Aug. 1, 2019). The surviving three claims are those at issue in the present motions. Those claims allege that, following the termination of the Independent Contractor

---

[2] The events involving post-termination commissions are the subject of the plaintiffs' other suit in this court. *See Roumann Consulting Inc. v. T.V. John & Son, Inc.*, No. 17-C-1407, 2020 WL 407125 (E.D. Wis. Jan. 23, 2020).

9

Agreement, Symbiont used Roumann's Confidential Information without Roumann's consent. First, the plaintiffs seek a declaratory judgment stating that Symbiont's use of that information amounts to a breach of the confidentiality provisions of the Agreement. Second, the plaintiffs claim that, by using the information, Symbiont committed the tort of conversion, and the plaintiffs seek damages for such conversion. Finally, the plaintiffs allege that Symbiont has been unjustly enriched through its use of the Confidential Information. These three claims are asserted against all three Symbiont entities: Symbiont, Symbiont Holding, and Symbiont Science. However, the claims against Symbiont Holding and Symbiont Science are derivative of the claims against Symbiont, in that they depend on proving that Symbiont passed Rousse's or Roumann's Confidential Information on to them by transferring the Procore database to them in late 2019, when Symbiont stopped bidding on construction work. (Defs. Resp. to Pls. Add'l PFOF ¶ 39.)

The Symbiont entities now move for summary judgment on the remaining claims. The plaintiffs seek summary judgment on two issues. First, they move for summary judgment on their claim for a declaratory judgment stating that Symbiont misused the plaintiffs' Confidential Information and therefore breached the Independent Contractor Agreement. Second, they move for summary judgment on the issue of the defendants' liability for conversion.

## II. DISCUSSION

### A. Summary Judgment Standard and Choice of Law

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light

most favorable to the non-moving party and must grant the motion if no reasonable trier of fact could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

The parties agree that Wisconsin law governs this case.

## B.    Identifying Confidential Information

All three of the plaintiffs' claims require proof that Symbiont possesses and has used Rousse or Roumann's confidential information without their permission. As discussed in the background section, the plaintiffs claim that nearly all information in Symbiont's Procore database qualifies as their Confidential Information as defined by the Independent Contractor Agreement. The relevant part of that definition states that Confidential Information includes "the Disclosing Party's manner and method of conducting business, customer proposals, concepts, ideas, plans, methods, market information, technical information, and the Disclosing Party's client, prospective client and contact lists." (Agreement § 8.1(a).)

An initial question is whether any information in Procore could qualify as the "Disclosing Party's" (*i.e.*, Rousse and/or Roumann's) Confidential Information. That is, assuming that information in Procore takes the form of customer proposals, market information, or client or contact lists, did that information belong to Rousse and/or Roumann alone, or did it also belong to Symbiont? This question is of obvious importance because most of the information in Procore was obtained in the ordinary course of Symbiont's business, which consisted of bidding on and managing construction projects for big-box retailers. As discussed in the background section, Symbiont compiled the information in Procore on a per-project basis based, in part, on what it and

11

Roumann/Rousse learned while bidding on and managing the project. As Rousse testified at his deposition, "[s]o we'd bid a project, document it; get a project, document it; contact lists, as we're doing projects, gets documented." (Rousse 2022 Dep. at 43:7–43:19.) If the information in Procore consists of information about Symbiont's own bids and projects, how could it qualify as Rousse or Roumann's Confidential Information?

Rousse's position is that any information that he learned while doing his job—either as an employee of Symbiont between late 2011 and early 2015 or as an independent contractor between 2015 and 2017—qualifies as his or Roumann's Confidential Information. However, as a matter of agency law, anything that Rousse learned within the scope of his employment or agency for Symbiont would have become Symbiont's information the moment he learned it. As the Seventh Circuit has explained, "Corporations do not have brains, but they do have employees. One fundamental rule of agency law is that corporations 'know' what their employees know—at least, what employees know about subjects that are within the scope of their duties." *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 378 (7th Cir. 2010). So, of course, anything that Rousse learned within the scope of his employment for Symbiont would have been information that was known to Symbiont, even if Rousse did not share that information with Symbiont.[3] Similarly, when Rousse, through Roumann, became Symbiont's independent

---

[3] For purposes of this case, I need not decide whether, as Symbiont argues, Symbiont is the *exclusive* owner of information that Rousse learned within the scope of his employment. *See* Restatement (Third) of Unfair Competition § 42 cmt. e. (Am. Law. Inst. 1995) ("valuable information that is the product of an employee's assigned duties is owned by the employer, even when the information results from the application of the employee's personal knowledge or skill"). It is enough to find that the information learned by Rousse within the scope of his employment is at least jointly owned by Rousse and

12

contractor, anything he learned within the scope of his agency for Symbiont would have been known to Symbiont. See *Townsend v. ChartSwap, LLC*, 399 Wis. 2d 599, 614–15 (2021) (recognizing that an agent's actions are the principal's actions); *State v. Dried Milk Prods. Co-op*, 16 Wis. 2d 357, 361 (1962) ("a corporation acts of necessity through its agents whose acts within the scope of the agent's authority are the acts of the corporation"). The confidentiality provisions of the Independent Contractor Agreement did not override these basic principles of agency law.

With these principles in mind, I will examine whether any information in Procore qualifies as Rousse or Roumann's Confidential Information. I am willing to assume that any information, such as subcontractor lists, that Rousse compiled before he became employed by Symbiont in December 2011, could have qualified as his confidential information as of December 2011. That is so because Rousse did not obtain that information while acting within the scope of his employment for Symbiont. However, once Rousse's employment commenced, any information that he learned while bidding on and managing projects for Symbiont would have become Symbiont's information. Clearly, bidding on and managing construction projects were acts within the scope of Rousse's employment. He was paid a salary, benefits, and commissions to do this exact work. (ECF No. 82-1.) Further, every time Symbiont received a bid from, or entered into a contract with, one of the clients or subcontractors on Rousse's lists, information about that particular client or subcontractor would have become Symbiont's knowledge, for at that point Symbiont had its own business relationship with the client or subcontractor.

---

Symbiont and therefore could not be information that Rousse could keep secret from Symbiont.

13

Rousse contends that, during his employment for Symbiont, he assembled information about big-box construction projects on his own time, that he did not share this information with Symbiont, and that he did not "invoice" Symbiont for assembling this information. (Rousse Decl., March 18, 2022, ¶¶ 17–18.) However, Rousse does not explain what he means by "his own time," which, in this context, is nothing more than a legal conclusion that the information was not gathered within the scope of his employment. And the only factual material in the record supports the conclusion that the information was learned within the scope of Rousse's employment in bidding on and managing construction projects for Symbiont. How else would Rousse have learned about subcontractors and clients within the industry? Rousse does not claim to have cold-called subcontractors or to have studied other general contractors' projects in his spare time. Indeed, Rousse explains in his declaration that all his information was assembled from his "experience working for a number of general contractors" and was derived from "past project information." (Rousse Decl., March 18, 2022, ¶¶ 12–13.) To the extent that the general contractor was Symbiont and the past projects were Symbiont's (as they were after December 2011), the information must have been learned within the scope of Rousse's employment. Further, the fact that Rousse did not share the information he learned within the scope of his employment with Symbiont is irrelevant. Again, while Rousse was Symbiont's employee, his acts *were* Symbiont's acts, and therefore anything he learned, Symbiont learned, even if he did not physically transmit the information to Symbiont. *Townsend*, 399 Wis. 2d at 614–15; *Admiral Ins. Co. v. Paper Converting Mach. Co.*, 339 Wis. 2d 291, 312 (2012). Finally, while he was an employee, Rousse was paid a salary and commissions rather than an hourly fee (*see* ECF No. 82-1), so the fact that

14

he did not "invoice" Symbiont for the time he spent assembling confidential information is irrelevant to whether he obtained the information within the scope of his employment.

Accordingly, anything that Rousse learned between December 2011 and early 2015 was Symbiont's information and therefore could not have been Rousse's or Roumann's Confidential Information. When the parties signed the Independent Contractor Agreement in early 2015, the only information that could have qualified as Roumann's Confidential Information was subcontractor lists, etc., that Rousse compiled prior to his employment by Symbiont and did not update based on the knowledge that he gained during the scope of his employment for Symbiont.

Turning to the period governed by the Independent Contractor Agreement, the analysis is similar. The scope of Roumann's agency included performing "sales, estimating, and project management services" for Symbiont. (Agreement, art. I.) The Agreement provided that Symbiont would pay Roumann an hourly fee for Rousse's labor, plus a commission for projects it obtained. (Defs. Resp. to Pls. PFOF ¶ 43.) During the period governed by the Independent Contractor Agreement, Roumann performed the same work that Rousse had performed as an employee. When a retailer such as Kroger solicited bids from general contractors for a new project, Roumann would examine the specifications for the job, contact subcontractors and invite them to submit bids to Symbiont, and then prepare Symbiont's bid. (Rousse 2022 Dep. at 118:14–118:18.) If Symbiont was awarded the general contract, Symbiont would enter into a contract with the retailer and subcontracts with the subcontractors. (Pls. Resp. to Defs. Add'l PFOF ¶ 161.) As far as the record reveals, Roumann worked exclusively for Symbiont during this period and did not serve as a consultant for other general contractors.

15

As Roumann performed these tasks, Symbiont documented information about the bidding process and any awarded projects in Procore. On a "per project basis over two years" (Rousse 2022 Dep. at 44:6–44:7), Symbiont uploaded to Procore information about the subcontractors that bid on its projects and information about the projects that Symbiont was awarded, including change orders and client contact lists (*id.* at 42:5–42:11). All this information was, of course, Symbiont's own information, even if it was the product of Roumann's or Rousse's efforts. Symbiont paid Roumann to prepare its bids and manage its projects, and so the information that Roumann generated while doing these tasks would have been Symbiont's knowledge under principles of agency law. Nothing in the Independent Contractor Agreement prevented Symbiont from keeping track of information that appeared in its own bids or that it or Roumann learned while managing Symbiont's own construction projects.

What the confidentiality provisions in the Independent Contractor Agreement protected was information that Roumann developed independently of its relationship with Symbiont. For example, if at the time the Agreement was signed, Roumann possessed a directory of subcontractors that it had developed independently of Symbiont, that directory would have been Roumann's Confidential Information (in the form of a "contact list," Agreement § 8.1(a)). If Roumann provided that directory to Symbiont for its use during the term of the Agreement, Roumann could demand that Symbiont stop using the directory once the Agreement was terminated. However, once Symbiont did business with one of the contacts in the directory, such as by receiving the contact's bid or entering into a subcontract with the contact, information about that specific contact that Symbiont learned during the course of the business relationship became Symbiont's own

16

information. The confidentiality provisions did not require Symbiont to "forget" information about parties with which it dealt simply because Symbiont first learned about the party from Roumann's confidential directory. Instead, those provisions prohibited Symbiont from continuing to use the directory itself. Put differently, the confidentiality provisions were not non-solicitation provisions that prohibited Symbiont from contacting customers or subcontractors that Roumann had introduced to Symbiont. And because information that Symbiont learned through its own bids and its own projects was its own information, Symbiont could aggregate that information into a database without violating the confidentiality provisions of the Agreement. *See BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 709 (7th Cir. 2006) (noting that use or disclosure of information "already known to the receiving party from some other source" does not breach a confidentiality agreement). After several years, that database might approximate Roumann's original directory. But so long as Symbiont built the database from its own work history and did not simply copy Roumann's directory, the database would not contain Roumann's Confidential Information.

Here, Roumann does claim to have created a directory of subcontractor lists organized in Excel files by trade and region. (Rousse Decl., March 18, 2022, ¶ 44; Rousse Decl., May 27, 2022, ¶ 44 & Ex. 10.) The files contain the name, address, trade, and contact information for each subcontractor, and in some cases whether the subcontractor is a union shop. If Rousse and Roumann had created this directory based on information Rousse learned outside the scope of his employment or agency for Symbiont, then it could qualify as Confidential Information under the Independent Contactor Agreement as a contact list. Further, if Symbiont had uploaded the directory to Procore, then Roumann

17

could demand that Symbiont delete the directory from Procore. Symbiont seems to deny that it ever had copies of this directory, either on Procore or otherwise. (*See* Br. in Opp. to Mot. to Seal at 1–3, ECF No. 114.) However, Rousse gave testimony at his deposition that could be reasonably construed as testimony that Symbiont uploaded the Excel files to Procore. (Rousse 2022 Dep. at 84:21–85:8 (describing subcontractor lists for various regions as "the lists that were uploaded to Procore and expanded on").) For purposes of deciding the defendants' motion for summary judgment, I will accept this testimony as true. Thus, I assume for purposes of the defendants' motion that the Excel files that appear in the record as Exhibit 10 to Rousse's May 2022 declaration were uploaded to Procore.

The problem for Roumann is that it has not submitted evidence from which a reasonable trier of fact could conclude that the Excel files were created independently of Rousse and Roumann's work for Symbiont. The dates on these files indicate that they were either created or updated on various dates between September 2016 and April 2017. (Rousse Decl., March 18, 2022, ¶ 44.) By that time, Rousse had been working exclusively for Symbiont either as an employee or an independent contractor for approximately five years. Therefore, much of the information in the Excel files consists of information that Rousse learned during the scope of his employment or agency for Symbiont, and which would not be Rousse or Roumann's Confidential Information. *See Northern Elec. Co., Inc. v. Torma*, 819 N.E.2d 417, 422–25 (Ind. Ct. App. 2004) (finding that directory complied by employee on his own time from data learned during scope of employment was owned by employer). Although it is possible that Rousse learned some of the information within the files before he began his employment at Symbiont in

18

December 2011, the plaintiffs have not attempted to identify the portions of the files that were compiled prior to that time.

Ultimately, then, the only information that could qualify as Roumann's Confidential Information is information that Rousse gathered prior to December 2011 and assembled into customer or contact lists that were not updated with information that Rousse or Roumann learned within the scope of their agency or employment for Symbiont. But the plaintiffs have not submitted evidence from which a reasonable trier of fact could conclude that any such customer or contact lists existed. Moreover, as explained below, even if a trier of fact could conclude that such lists existed, the plaintiffs have submitted no evidence from which a reasonable trier of fact could conclude that Symbiont used any such information after termination of the Independent Contractor Agreement.

**B.      Use of Confidential Information**

The Independent Contractor Agreement prohibits a receiving party from using or disclosing the other party's Confidential Information "except to the extent necessary to perform its obligations" under the Agreement. (Agreement § 8.1(a).) Although the Agreement did not impose any "obligation" on Symbiont to bid on work or manage construction projects at any time, the plaintiffs do not contend that Symbiont breached this confidentiality provision by using Roumann's information while the Agreement was in effect. Rather, the plaintiffs contend that Symbiont breached this provision by using Roumann's Confidential Information "to bid and obtain construction projects after [Symbiont] terminated Roumann Consulting on August 21, 2017." (Br. in Supp. of Summ. J. at 3, ECF No. 80.) To prevail on this claim for breach of contract, the plaintiffs must prove that, after termination of the Agreement, Symbiont used something that qualifies as

19

Roumann's Confidential Information. Similarly, to prevail on claims for conversion and unjust enrichment, the plaintiffs must prove, at a minimum, that Symbiont (or Symbiont Holding or Symbiont Science) used something that qualifies as Roumann's Confidential Information.

As discussed in the prior section, the only information that could possibly qualify as Roumann's Confidential Information is information acquired by Rousse prior to December 2011, such as a list of subcontractors that Rousse had compiled prior to that time. However, the plaintiffs have submitted no evidence from which a reasonable trier of fact could conclude that, after the Independent Contractor Agreement was terminated, Symbiont used information that Rousse had compiled prior to December 2011. Instead, the plaintiffs submit evidence that Symbiont used Procore to bid on and manage construction projects after termination of the Agreement. But, as discussed above, Procore contained information about Symbiont's own historical bids and projects, and that therefore could not have been Rousse or Roumann's Confidential Information. Thus, a reasonable trier of fact could not find, based solely on the fact that Symbiont used Procore after August 21, 2017, that Symbiont used Rousse or Roumann's Confidential Information after that date.

The plaintiffs contend that evidence submitted by Symbiont's project managers establishes that Symbiont used Rousse or Roumann's Confidential Information to bid on projects after termination of the Agreement. However, the cited testimony is either testimony that Symbiont used Procore in connection with a bid or project (Dep. of Dean Handrow at 41:8–61:1; Dep. of Chad Johnson at 32:15–37:10), or testimony that the project manager has knowledge that "Confidential Information," as defined by the

Independent Contractor Agreement, was uploaded to Procore and used on projects after termination of the Agreement (Decl. of Keith Winningham ¶¶ 4–9; Decl. of Brian Binkowski ¶¶ 4–9). The former testimony does not help the plaintiffs because, as explained, nearly all the information in Procore was information about Symbiont's own bids and projects, so evidence that Procore was used is not evidence that Roumann's Confidential Information was used. And the latter testimony does not help the plaintiffs because the witnesses do not identify the specific information that they observed in Procore. The witnesses do not, for example, state that a customer list from before December 2011 was uploaded to Procore and used on post-termination projects. The witnesses merely cite the definition of Confidential Information in the Agreement and state that such information was uploaded to Procore. Because the witnesses do not testify that they understood that such definition applied only to information that Rousse assembled prior to December 2011, their testimony does not support the conclusion that Symbiont used Confidential Information after the Agreement's termination.

## C.    Summary Judgment Conclusion

In sum, the record shows that the information that Rousse and Roumann claim as their own Confidential Information consists primarily of Symbiont's own bid and project history, which was Symbiont's own information. When Symbiont uploaded information about its bids and projects to Procore, it did not upload Rousse or Roumann's Confidential Information. While it is possible that some bits of information that Rousse learned prior to December 2011 and never used in the scope of his employment or agency for Symbiont remained in Procore post-termination, the plaintiffs have not identified any such information or shown that Symbiont used that information post-termination. No

21

reasonable juror confronted with the present record could conclude that Symbiont used information from 2011 and earlier after the termination of the Independent Contractor Agreement in August 2017. Therefore, the plaintiffs have failed to carry their burden of production on an essential element of their claims for breach of contract, unjust enrichment, and conversion. The defendants are entitled to summary judgment on these claims. The plaintiffs' cross-motion for partial summary judgment will be denied.

**D.     Plaintiffs' Motion to File Certain Exhibits Under Seal**

Before concluding, I must address the plaintiffs' motion to seal Exhibits 1 and 4 – 10 to the May 27, 2022 Declaration of Ronald Rousse, which Symbiont opposes. The plaintiffs contend that this information should be sealed because it qualifies as Roumann's Confidential Information within the meaning of the Independent Contractor Agreement. Their motion thus implicates some of the same issues that I discussed above. However, the applicable legal standard is slightly different. Information in the judicial record that influences or underpins the judicial decision is open to public inspection unless it meets the definition of trade secrets or other categories of bona fide long-term confidentiality. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). Thus, to show that a document in the record should be sealed, the party seeking to maintain confidentiality must demonstrate that the document is a trade secret or falls within one of the other recognized categories. The other categories are information covered by a recognized privilege and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault). *Id.* at 546. These other categories are not relevant here.

Exhibit 1 contains two spreadsheets that appear to be unrelated. The first is a short spreadsheet that was created in connection with a Kroger project in Lafayette, Indiana. The data in this spreadsheet consists of names of subcontractors, their contact information, and a note as to whether they were "bidding" or "reviewing." There is also a "message history" column that contains names and phone numbers of subcontractors. The second spreadsheet is a list of subcontractors associated with a specific Kroger project in Sandusky, Ohio. The data in the spreadsheet consists of the name, trade, and contact information of each subcontractor. Because there is only one subcontractor for each trade, I assume that these were the subcontractors that Symbiont either included in its bid to Kroger or, if the bid was successful, engaged to perform the actual construction work. Rousse contends that he prepared these spreadsheets for Symbiont and sent them to Symbiont employees to be uploaded into Procore. (Rousse Decl., May 27, 2022, ¶ 12.)

Neither Symbiont nor Rousse claims that Exhibit 1 contains trade secrets. Although Rousse seems to contend that Exhibit 1 contains Roumann's Confidential Information, it is clear that all the information within the exhibit consists of information about Symbiont's own bid or project—namely, the subcontractors that Symbiont dealt with when preparing its bid or performing the awarded contract. Perhaps it was Roumann who found these subcontractors for Symbiont, but if so, it would have been acting within the scope of its agency for Symbiont and therefore could not claim the resulting information as its own. In other words, because Symbiont paid Roumann to prepare bids and solicit subcontractors, the information it obtained or compiled while doing so became Symbiont's information. Indeed, it is absurd to suggest that the confidentiality provisions

of the Agreement entitled Roumann to keep a list of Symbiont's own subcontractors confidential from Symbiont. Therefore, Exhibit 1 will be unsealed.

Exhibit 4 is an instruction sheet that tells Symbiont's employees how to search for subcontractors and advises employees to add the subcontractor to Procore if the subcontractor expresses interest in bidding on future projects. Symbiont does not claim that this document is its trade secret, and the plaintiffs do not claim to have created or contributed information to this document. Therefore, it does not contain trade secrets or the plaintiffs' Confidential Information and will be unsealed.

Exhibit 5 is a blank form that Symbiont used as a task list to help it prepare bids to potential customers. The form contains a table that lists specific tasks in each row, and it has columns for indicating which Symbiont employee is responsible for completing the task and by when it is due. Symbiont does not claim that this document is its trade secret, and the plaintiffs do not claim to have created or contributed information to this document. Therefore, it does not contain trade secrets or the plaintiffs' Confidential Information and will be unsealed.

Exhibit 6 is a blank form entitled "Subcontractor Qualification Form." It bears Symbiont's (and T.V. John's) logo and contains blanks to be filled in with information about a particular subcontractor. Symbiont does not claim that this document is its trade secret. Rousse seems to say that he added some blanks to this document to track information about subcontractors that he wanted to track (Rousse Decl., May 27, 2022, ¶ 29), but he does not contend that the blank document qualifies as his own trade secret. Further, blanks on a form do not meet the definition of Confidential Information in § 8.1(a) of the Agreement. Accordingly, this exhibit will be unsealed.

Exhibit 7 is an example of the kind of information that is stored in Procore about Symbiont's subcontractors. The exhibit consists of the subcontractor's bid that was submitted to Symbiont as part of Symbiont's bid to become the general contractor for a Kroger remodeling project in Muncie, Indiana. It also contains a cover sheet that appears to have been created by Symbiont to summarize the subcontractor's bid. The subcontractor's contact information appears on the bid and the cover sheet. Although the plaintiffs seem to claim that the identity of a single subcontractor counts as Confidential Information, that is not the case, as the Agreement defines Confidential Information as "contact *lists*" rather than individual contacts. (Agreement § 8.1(a) (emphasis added).) Moreover, as explained above, the confidentiality provisions of the Agreement did not prohibit Symbiont from storing and using information about its own subcontractors.

The cover sheet for the bid also reflects the amount of the bid and a "cost code" associated with the subcontractor's trade (here, joint sealing and firestopping, 0784-00). The cost code is a standardized code used throughout the building trades to identify certain types of work and therefore could not be a trade secret. While the plaintiffs seem to claim that cost codes meet the definition of confidentiality under the Independent Contractor Agreement, they do not explain how this could be so. They do not claim to have invented the concept of the cost code, and standardized industry codes are not among the categories of information deemed confidential under § 8.1(a) of the Agreement. Perhaps the plaintiffs mean to claim that they tracked the prices submitted by subcontractors associated with certain cost codes. However, the prices were submitted to Symbiont (or perhaps to Roumann as Symbiont's agent) as part of the subcontractors' bids, and therefore the information about pricing was Symbiont's own

25

information. As Exhibit 7 contains neither trade secrets nor the plaintiffs' Confidential Information, it must be unsealed.

Exhibit 8 is a spreadsheet that contains contact information for all entities involved in a Kroger project in Muncie, Indiana. Symbiont (under the name T.V. John) is identified as the general contractor for the project, and contact information for its employees is included in the spreadsheet. The spreadsheet also contains contact information for Kroger, for the project's architect, and for subcontractors and suppliers associated with the project. Rousse claims that he prepared this spreadsheet and sent it to Symbiont to be uploaded into Procore. (Rousse Decl., May 27, 2018, ¶ 39.) Even if that is true, the underlying information would still belong to Symbiont, as the information pertains to one of Symbiont's own projects, and therefore it could not be Roumann's Confidential Information. Symbiont does not claim that this exhibit contains its own trade secrets or Confidential Information, and therefore Exhibit 8 will be unsealed.

Exhibit 9 is another document associated with a Kroger project in Muncie, Indiana. The document describes the work that needed to be performed by subcontractors in each trade and identified the project drawings that a subcontractor needed to review before submitting a bid to Symbiont. Rousse contends that this document was created by someone (he does not claim it was him) using Procore. (Rousse Decl., May 27, 2022, ¶ 39.) But Rousse does not claim that any of the data used to create the document qualifies as his or Roumann's trade secret or Confidential Information. And it is hard to see how it could. The document simply describes a specific Kroger project that Symbiont intended to bid on. The document also contains cost codes for each trade, but as explained above, cost codes do not qualify as Roumann's Confidential Information.

26

Exhibit 10 is the only document in the record that could plausibly contain the plaintiffs' trade secrets or Confidential Information. These are the Excel files that I discussed above that serve as a directory of subcontractors organized by trade and region. These files meet the definition of a trade secret because they are "compilations" that derive independent value from not being generally known within the industry and have been subject to reasonable efforts to maintain secrecy. *See* Wis. Stat. § 134.90(1)(c). As discussed above, the plaintiffs have failed to prove that these lists contain information that they learned outside the scope of their employment or agency for Symbiont, and therefore the plaintiffs have not proved that they have a right to prevent Symbiont from using these lists. *See Torma*, 819 N.E.2d at 422–25. Still, even if the plaintiffs do not have a right to prevent Symbiont from using them, it does not follow that the lists do not retain some value by not being generally known within the big-box-retailer construction industry. Therefore, I will treat the lists as a trade secret and grant the plaintiffs' motion to seal insofar as it applies to Exhibit 10.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiffs' motion for partial summary judgment (ECF No. 79) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 87) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to prevent the defendants from presenting undisclosed expert witnesses at trial (ECF No. 75) is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that the defendants' motion to restrict (ECF No. 86) the documents attached as Exhibit 6 to the Declaration of Andrew S. Oettinger (ECF No.

27

90-6) is **DENIED** because the plaintiffs have withdrawn their Confidential designation from these documents.

      **IT IS FURTHER ORDERED** that the plaintiffs' motion to file under seal (ECF No. 110) Exhibits 1 and 4–10 to the May 27, 2022 supplemental declaration of Ronald Rousse (ECF No. 109) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Exhibit 10 (ECF No. 109-18) and denied as to all other exhibits.

      **FINALLY, IT IS ORDERED** that the Clerk of Court shall enter final judgment.

      Dated at Milwaukee, Wisconsin, this 30th day of September, 2022.

/s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge