

**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Argued January 23, 2024
Decided June 26, 2024

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

DORIS L. PRYOR, *Circuit Judge*

No. 22-2874

| | |
|---|---|
| ROUMANN CONSULTING, INC., and RONALD ROUSSE,<br>*Plaintiffs-Appellants*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| v. | No. 18-C-1551 |
| SYMBIONT CONSTRUCTION, INC., et al.,<br>*Defendants-Appellees*. | Lynn Adelman,<br>*Judge*. |

### O R D E R

Ronald Rousse and Roumann Consulting, Inc., appeal from the entry of adverse decisions in their second lawsuit against Symbiont Construction, Inc., several of its officers and owners, and two related companies (collectively, "Symbiont"). The district court granted in part Symbiont's motion to dismiss, finding that most of Rousse and Roumann Consulting's claims were barred by the rule against claim splitting. Later, the court entered summary judgment for Symbiont on all of the remaining claims. We affirm.

## I.

We recount the facts, and the reasonable inferences to be drawn from those facts, in the light most favorable to Rousse and Roumann Consulting. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017).[1]

### A.

Ronald Rousse has worked in the construction industry for decades. He specializes in light commercial construction projects for "big box" retailers. Rousse is particularly adept at bidding on and managing construction projects for these large retailers that want "branded structures"—buildings that look essentially the same no matter where they are located. Over time, Rousse built a database to track bidding information about the subcontractors he used for these branded structures, including their names, experience levels, qualifications, and bidding and pricing practices.

Because of Rousse's expertise, he was hired in December 2011 by T.V. John & Son, Inc., a construction company, as its Vice President of Estimating, Project Controls and Major Projects. Rousse was paid an annual salary and earned a 30% commission on any new business he brought in. Rousse's primary job responsibilities included estimating the cost of, and bidding on, projects for big box retailers like Menards, Kroger, and Fresh Market.

While employed by T.V. John & Son, Rousse continued building his subcontractor database. He included all the information about the big box projects he worked on as a T.V. John & Son employee. The database eventually ballooned into "hundreds of thousands of specific datapoints" that Rousse used to predict quickly and accurately how much a new project would cost T.V. John & Son before it submitted a bid. Rousse did not share his database with anyone. Instead, he used the database personally to create bidding packages for T.V. John & Son.

---

[1] One caveat. At oral argument, the appellants' counsel raised for the first time several new factual assertions that lack any support in the record. For example, counsel asserted repeatedly that Rousse is an "engineer" or a "geo-engineer" who performs "engineering evaluation of trusses"; counsel insisted that we can find support for that assertion at "DN 109." (Oral Argument at 1:04–06, 3:25, 9:23–33). Docket 109 is a twenty-six-page declaration accompanied by 950 pages of exhibits. The Court was unable to locate any reference to Rousse being an engineer, let alone that he performed engineering evaluations of trusses. We will disregard any assertions or arguments made for the first time at oral argument. *See, e.g.*, *Argyropoulos v. City of Alton*, 539 F.3d 724, 739–40 (7th Cir. 2008).

No. 22-2874                                                                                                   Page 3

In 2015, Symbiont acquired T.V. John & Son.[2] Symbiont then negotiated with Rousse to become an independent contractor. Rousse created Roumann Consulting and signed an Independent Contractor Agreement with Symbiont. As an independent contractor, Roumann Consulting performed essentially the same role for Symbiont that Rousse had previously performed as an employee for T.V. John & Son.

The confidentiality clause of the Independent Contractor Agreement, § 8.1(a), provided that the parties would not use or disclose the other party's confidential information "except to the extent necessary to perform" under the contract. The term "confidential information" was defined as:

> [T]he Disclosing Party's information that is proprietary or confidential in nature or confidential or proprietary information that is licensed to the Disclosing Party and includes, but is not limited to, the Disclosing Party's manner and method of conducting business, customer proposals, concepts, ideas, plans, methods, market information, technical information and the Disclosing Party's client, prospective client and contact lists.

After the agreement was finalized, Rousse shared significant portions of his database with Symbiont and its employees. Rousse's database was also added to Symbiont's centralized computer software program, Procore, which automates various aspects of Symbiont's processes of tracking and bidding on construction projects. Rousse also continued to build out his database using information learned as Symbiont's independent contractor. Rousse contends that nearly all of the data contained in Procore—which Symbiont continues to use—comes from his confidential information.

On August 21, 2017, Symbiont sent a letter to Rousse notifying him that Symbiont was terminating the Independent Contractor Agreement, effective September 20, 2017. In the termination letter, Symbiont confirmed that Rousse would receive his owed commissions for the next two years. On September 22, 2017, Symbiont made its first (and, as it turned out, only) commission payment to Rousse.

**B.**

Rousse turned to federal court—twice. In the first suit, *Roumann I*, which is ongoing, Rousse alleges that Symbiont breached its contract with Roumann Consulting by failing to pay commissions to Rousse. *See Roumann Consulting, Inc. v. T.V. John & Son*,

---

[2] For purposes of this appeal there is no relevant difference between "Symbiont" and "T.V. John & Son," so from here on we refer to both as "Symbiont" for clarity.

*Inc.*, No. 17-C-1407, 2019 WL 3501513, at *1 (E.D. Wis. Aug. 1, 2019). Symbiont counterclaimed, alleging that it did not owe Rousse anything because Symbiont terminated Rousse for "willful misconduct." During the discovery process in *Roumann I*, however, several Symbiont officers admitted that the company had not fired Rousse for "willful misconduct." Given that evidence, on August 1, 2019, the district court entered summary judgment for Rousse on Symbiont's counterclaim. *Id.* at *6.[3]

After the district court denied Rousse's motion for leave to file a second amended complaint in *Roumann I*, Rousse brought the lawsuit underlying this appeal. In *Roumann II*, Rousse brought a thirteen-count complaint that mostly duplicated the complaint in *Roumann I*. In ruling on the defendants' motion to dismiss, the district court dismissed all but two of these redundant counts based on the rule against claim splitting.

Only one of the dismissed counts is relevant to this appeal. In Count VI of the *Roumann II* complaint, Rousse alleged that Symbiont conspired to injure his business, Roumann Consulting, by "making false promises of [commission] payment[s]" in the Independent Contractor Agreement, in violation of WIS. STAT. § 134.01. According to Rousse, the object of Symbiont's alleged conspiracy was twofold: "to steal Mr. Rousse and Roumann Consulting's Customers and Confidential Information" and "to force Mr. Rousse and Roumann Consulting to accept a payment that is less than is otherwise owed under the Independent Contractor Agreement."

In the two counts that survived dismissal, Rousse alleged that Symbiont was continuing to breach the Independent Contractor Agreement by using Rousse's confidential information to obtain new construction projects.

Following discovery, Symbiont moved for summary judgment on these two remaining counts. The court entered summary judgment for Symbiont, finding that none of the information that Rousse and Roumann Consulting obtained as Symbiont's employee or agent was "confidential" within the meaning of the parties' Independent Contractor Agreement. The district court also noted that Rousse failed to provide any evidence that Symbiont had used any data Rousse obtained before he began working for Symbiont. This appeal followed.

---

[3] *Roumann I* is currently scheduled for trial on August 19, 2024.

No. 22-2874  Page 5

## II.

### A.

On appeal, Rousse and Roumann Consulting first contest the district court's decision to dismiss the injury-to-business claim under the rule against claim splitting. We review for an abuse of discretion. *Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. 2021).

The rule against claim splitting generally requires plaintiffs to bring every theory for relief arising from "the same transaction or events" in a single lawsuit. *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). In that sense, the rule is an aspect of the doctrine of claim preclusion (in Latin, *res judicata*). *Rexing Quality Eggs v. Rembrandt Enters., Inc.*, 953 F.3d 998, 1002 (7th Cir. 2020). That's why our caselaw on claim splitting "draw[s] on principles of claim preclusion," except that we may apply the rule against claim splitting even if there is no final judgment on the merits. *Scholz*, 18 F.4th at 952 (citing *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011)).

This rule applies if, first, both lawsuits involve the same parties or those in privity with the parties, and second, the lawsuits arise from the same "cause of action"—in other words, the two suits "are based on the same, or nearly the same, factual allegations." *Scholz*, 18 F.4th at 952 (citation omitted). Like the district court, we also conclude that both elements are met here.

First, both *Roumann I* and *Roumann II* involve the same parties. The plaintiffs are identical in both suits. The defendants in *Roumann II* differ from those in *Roumann I*, but the differences are immaterial. As the district court found, the defendants in both cases are all in privity. The complaint in *Roumann II* alleges that T.V. John & Son (the defendant in *Roumann I*) and Symbiont Construction Inc. (the defendant in *Roumann II*) are the same legal entity. The complaint further alleges that the Symbiont entities are all "a single company" whose separate corporate forms should be disregarded. In other words, the only asserted basis for liability against the Symbiont entities is that they are a single successor entity to T.V. John & Son, which also means that they are in privity with T.V. John & Son. *See Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1327 (7th Cir. 1992); *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995). The individual defendants named in *Roumann II* are all Symbiont officers and shareholders, meaning that they also are all in privity with T.V. John & Son. *Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 103 (7th Cir. 1993). In addition, Rousse does not challenge the court's privity determination. Therefore, any argument that the court erred in making this determination is waived. *Tuduj v. Newbold*, 958 F.3d 576, 579–80 (7th Cir. 2020).

Looking to the second criterion, both *Roumann I* and *Roumann II* arise from the same cause of action. In both lawsuits, Rousse and Roumann Consulting sued Symbiont for firing Rousse and failing to pay him commissions he was owed. Rousse resists this conclusion by arguing that his injury-to-business theory in *Roumann II* is new. But that's irrelevant. The rule against claim splitting is unconcerned with legal theories. It asks instead whether the plaintiff's claim arises from the same set of operative facts. *Scholz*, 18 F.4th at 952. Because the same set of operative facts forms the basis for Rousse's new, alternative breach of contract theory, the rule against claim splitting applies.

In his reply brief, Rousse argues for the first time that his injury-to-business claim *is* based on a different set of operative facts—namely, Symbiont's decision to file a false counterclaim in *Roumann I*. Not only is this argument waived, *e.g.*, *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011), it is baseless. The complaint in this case clearly asserts that the injury-to-business claim is based on Symbiont's improper firing of Rousse and failure to pay his commissions—precisely the same basic facts behind *Roumann I*. The word "counterclaim" is nowhere in Rousse's fifty-one-page, 217-paragraph complaint. Reasonable mistakes about the record are understandable, but it does neither counsel nor his client any good for counsel to assert that allegations exist when they do not.

**B.**

Rousse next challenges the entry of summary judgment on his breach of contract claim. We take a fresh look at summary judgment decisions. *E.g.*, *EEOC v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 593 (7th Cir. 2022). Recall that Rousse claimed that Symbiont breached the parties' agreement by using Rousse and Roumann Consulting's confidential information to acquire new business. On appeal, Rousse asserts that the district court erred by concluding that his bidding data was both known to, and equally owned by, Symbiont, such that this data was not "confidential" within the meaning of the Independent Contractor Agreement. Rousse asserts that the parties' agreement designates all "confidential information" as Rousse's information and that assembling appropriate bidding data for Symbiont was not part of his job. We disagree.

The Independent Contractor Agreement defines confidential information as "information that is proprietary or confidential in nature." Thus, for Rousse's information to have fallen within this definition, the data must have belonged solely to Rousse and could not have been independently known by Symbiont.

Rousse's database, insofar as it is made up of information accumulated between December 2011 and August 2017, fails both requirements. First, the information was at least equally owned by Symbiont because it was acquired either during the scope of

Rousse's employment or through Roumann Consulting's agency relationship with Symbiont. "If an employee collects or develops [valuable business information] as part of the assigned duties of the employment, the information is owned by the employer." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 42 cmt. e (AM. L. INST. 1995); *see also Chuck Wagon Catering, Inc. v. Raduege*, 277 N.W.2d 787, 792 (Wis. 1979) (noting that valuable business assets developed during an employee's employment generally belong to the company, not the employee). Rousse's job for Symbiont (individually and later through Roumann Consulting) consisted of bidding on construction projects; without the data he collected after he was hired, Rousse could not have effectively performed his job.[4] Moreover, Roumann Consulting accumulated the purported "confidential" bidding data while Rousse was acting as Symbiont's agent and within the scope of that independent contractor relationship. Therefore, the subcontractor and bidding data that Rousse acquired, as part of his duties for Symbiont between December 2011 and August 2017, belonged (at least) equally to Symbiont.

Second, it is well-established that "an employee's knowledge of a matter within the scope of his duties is imputed to the employer." *Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010). Indeed, a "fundamental rule of agency law is that corporations 'know' what their employees know … about subjects that are within the scope of their duties." *Id.* at 378. Because Rousse and Roumann Consulting collected the bidding data during the scope of their work, Symbiont knew whatever Rousse and Roumann Consulting knew about those specific projects. *See id.* Relatedly, Symbiont had access to all of this information through its own bidding and subcontractor documents, so Symbiont could not have violated the confidentiality agreement with Rousse and Roumann Consulting by using information that it already knew from other sources. *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 709 (7th Cir. 2006).

Like the district court, we are willing to assume that the data that Rousse assembled *before* he became Symbiont's employee was protected "confidential information." On appeal, though, Rousse adopts an all-or-nothing approach. Rousse never argues that he is entitled to a trial about the extent to which Symbiont is using pre-December 2011 data. Nor has Rousse pointed us to any evidence that Symbiont was using pre-December 2011 data after his termination, even though the district court explicitly pointed to this issue in its decision. We will not "scour the record in search of

---

[4] There's a good argument that the information was exclusively owned by Symbiont, *see United States v. O'Hagan*, 521 U.S. 642, 654 (1997); *Carpenter v. United States*, 484 U.S. 19, 26 (1987), but we need not resolve that point.

No. 22-2874　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 8

evidence" to which we have not been directed, *Jaworski v. Master Hand Contractors, Inc.*, 882 F.3d 686, 691 (7th Cir. 2018) (citation omitted), and failing to address the district court's reasoning generally assures failure on appeal, *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 351 (7th Cir. 2020).

　　　We have considered Rousse's other arguments, but none merit discussion. For the foregoing reasons, we AFFIRM the decisions of the district court.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

June 26, 2024

Before
ILANA DIAMOND ROVNER, *Circuit Judge*
MICHAEL B. BRENNAN, *Circuit Judge*
DORIS L. PRYOR, *Circuit Judge*

CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

| No. 22-2874 | ROUMANN CONSULTING INC. and RONALD ROUSSE, Plaintiffs - Appellants  v.  SYMBIONT CONSTRUCTION INC., et al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:18-cv-01551-LA  Eastern District of Wisconsin  District Judge Lynn Adelman ||

We **AFFIRM** the decisions of the district court, with costs, in accordance with the decision of this court entered on this date.

Clerk of Court

form name: **c7_FinalJudgment**　(form ID: **132**)

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

July 15, 2024

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

DORIS L. PRYOR, *Circuit Judge*

No. 22-2874

| | |
|---|---|
| ROUMANN CONSULTING, INC., and RONALD ROUSSE, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
|     *Plaintiffs-Appellants*, | |
|     *v.* | No. 18-C-1551 |
| SYMBIONT CONSTRUCTION INC., et al., | Lynn Adelman, *Judge*. |
|     *Defendants-Appellees*. | |

**O R D E R**

    Plaintiffs-Appellants Roumann Consulting, Inc., and Ronald Rousse filed a petition for panel rehearing on July 10, 2024. All the judges on the panel have voted to deny rehearing. The petition for rehearing is therefore DENIED.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

July 23, 2024

To: Gina M. Colletti
UNITED STATES DISTRICT COURT
Eastern District of Wisconsin
Milwaukee, WI 53202-0000

| No. 22-2874 | ROUMANN CONSULTING INC. and RONALD ROUSSE, Plaintiffs - Appellants<br><br>v.<br><br>SYMBIONT CONSTRUCTION INC., et al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:18-cv-01551-LA<br>Eastern District of Wisconsin<br>District Judge Lynn Adelman | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                                              No record to be returned

form name: **c7_Mandate**   (form ID: **135**)